## Wells, et al. v. Kentucky Distilleries & Warehouse Co., et al.

(Decided June 21, 1911.)

### Appeal from Franklin Circuit Court.

1. Master and Servant—Infant Employee—Dangerous Place to Work —Failure of Master to Use Care.—The law is well settled that if a master or his servant knows that a child too young to appreciate his danger, is in a place of danger and fails to use reasonable care to prevent the child from being injured the master is responsible.

2. Liability of Master—Dangerous Machinery.—The liability of the master arises upon a duty imposed by law upon the owner and operator of places and machinery dangerous to young and inexperienced persons, not to injure or permit them to be injured by such machinery, after discerning their peril when same can be prevented by ordinary care.

G. H. BRIGGS, GREENE, VANWINKLE & SCHOOLFIELD for appellant.

BROWN & NUCKOLS, WM. MARSHALL BULLITT, KEITH L. BULLITT and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This action was brought by T. M. Phythian as guardian for Phythian Wells, an infant thirteen years of age, against the Kentucky Distilleries & Warehouse Company, J. and J. M. Saffell Company and William Morris, for damages on account of injuries received by Phythian Wells. It was alleged in the petition, among other things, that:

"Plaintiff says that on or about the 19th day of February, 1909, the defendant, William Morris, was an employee of defendants and engaged in the work of operating said distillery. He says that at the time of plaintiff's injury herein complained of said Morris was either the acting boss or foreman of said distillery with control over the whole of said plant and the men engaged and employed therein, or was the 'Beer boss' or beer runner therein and in charge of and in immediate control over the vats or tanks on which plaintiff was ordered, directed and permitted to go as hereinbefore stated, and by reason of which he was injured; that one or the other of said statements are true but plaintiff does not know which is true.

"Plaintiff says that he was on said day requested, directed and permitted by said Morris to go upon a vat or tank in said distillery and pull up a hose or pipe for the purpose of putting water into a smaller vat or tank; that in order to pull up said pipe or hose, as directed by said Morris, it was necessary for plaintiff to go upon and stand on a narrow plank over a vat or tank which was partly filled with hot and scalding water or slop; that with the knowledge and consent and under the direction of said Morris plaintiff did undertake to do said work and did go upon said plank running over said vat or tank.

"Plaintiff says that the place to which he was directed, requested and permitted by Morris to go and do said work was extremely dangerous by reason of the fact that the plank on which he had to stand was narrow, unsteady and slippery and unprovided with any means by which he could catch or hold to prevent his falling therefrom into the hot, scalding water in the open, uncovered tank or vat below. He says that at the time of his injury he was a child thirteen years of age; that he was totally unacquainted with and inexperienced in

the work which he was requested and directed to do and the place to which he was directed, requested and permitted by said Morris to go in order to perform same, and these facts said Morris and his co-defendants well knew; that he did not know or appreciate the risk or danger of attempting to do said work at said place, nor by the exercise of ordinary care on his part could he have known or realized same. He says that said Morris and his co-defendants knew, or by the exercise of ordinary care, could have known the dangerous, unsafe and perilous nature of the place to which plaintiff was requested and directed to go and in which he was requested, directed and permitted to work, and knew, or by the exercise of ordinary care, could have known the danger and peril to plaintiff of his attempting to do said work at said place, and that by reason of his age and inexperience he was not fitted or qualified to do such work at said place.

"Plaintiff says that he was not warned or advised by the defendant nor by their agent and employee, William Morris, as to the danger of going to or working at said place nor of the means of avoiding injury to himself and that, on account of his youth and inexperience plaintiff did not appreciate or realize the danger and peril of his attempting to do said work at said place."

The petition continues by stating the manner in which he received his injuries and the extent thereof.

The first paragraph of the answer put the allegations of the petition in issue, and the second alleged that his injuries, if any, were caused and brought about by his own contributory negligence, without which negligence contributing thereto said alleged accident and injuries could not and would not have occurred. This plea was denied by reply, completing the issues.

After a careful examination of all the evidence, we have concluded there was no evidence conducing to show that J. and J. M. Saffell Company had any connection with the operation of the distillery at the time plaintiff was injured, and it was therefore error for the lower court to submit any phase of the case to the jury, allowing it to find a verdict against that company. It was entitled to a peremptory instruction. It may have owned the buildings and leased them to the Kentucky Distilleries Company for the purpose of operating a distillery, but, as we understand the complaint, there is no claim

that appellant's injuries were caused by fault or negli-
gence in the construction of the buildings. (I. C. R. R.
Co. v. Sheegog's. Admr.)   The Kentucky Distilleries
and Warehouse Company was operating the plant
in its own right and for its own benefit, employ-
ing and paying all hands who labored at the distillery,
therefore it and appellee, William Morris, are liable to
appellant for his injuries, if any one is.

The facts proved by appellant, as shown by the
record, are in substance, that on February 18, 1909, he
was thirteen years and ten months of age; that he rode
to the distillery with some boys named Beck who went
there to get a load of distillery slop; that they obtained
the slop, went away and left appellant there. This slop
was in tubs placed just outside the south brick wall of
the distillery. These two tubs were situated between a
high stone abutment on the west and the coal shed on
the east. The larger vat was against the coal shed and
opposite a hole in the wall of the main brick building,
through which they ran the hose to wash the vats. The
larger vat which was six feet high and five feet in
diameter, was washed once a week; the other one which
was five feet high and twelve feet in diameter, was
washed once a day. This vat was about eleven inches
from the larger one, farther south and away from the
distillery wall and very near the stone abutment men-
tioned, which is about eight and a half feet high.  On top
of this abutment was an iron water tank about six feet
high. Extending down from this tank to the ground was
a five-inch pipe which ran near the outside of the large
vat. There was a space of a few feet betwen the stone
abutment and the wall of the main building, and also
space enough between the two vats to enable a person
to go through to this hole in the wall to receive the hose
when pushed through, but difficult to perceive by one not
acquainted with the premises.  There was a ladder lean-
ing against the large tub and at the top of it, going
across the tub in the direction of the hole in the wall,
was a trough the sides of which were made of wood and
the bottom was composed of copper netting which al-
lowed the water and soft slop to pass through into the
large vat and carried the thick slop into the small tub.
By the side of this trough, and parallel therewith, was
a plank which had been warped to some extent by the

heat arising from the tubs or by the sun as the tubs were outside the building and without cover.

Appellant was injured shortly after the noon hour when all the employes of the distillery had left for their meals, or some other purpose, except William Morris, the beer runner, who was fixing some pipes in the yard, and appellant was with him. They walked around to the vats, Morris looked into the small one, saw that it was empty and needed washing. He said to appellant, "Flick, I have a job for you. I want to wash this tub out." Wells remarked, "I will help you if I can." Morris said, pointing to the hole in the brick wall, "Go up yonder and pull the hose through that hole in the wall and I will go around into the building and shove the hose through and turn the water on when you get the end of the hose in the tub." Morris left the boy then and went around into the building, and Wells seeing the ladder leaning against the big vat, went up it and put his right foot on the plank and his left on the edge of the trough and moved along to the other side of the vat to a point two or three feet from the hole in the wall, took hold of the hose which Morris had shoved through, and finding it a little hard to pull he turned with his right foot on the trough and his left on the plank, made another pull and the hose gave suddenly, and either that or the slipping of his foot on the wet plank caused him to fall into the large vat which contained soft, hot slop which scalded his legs up to his crotch, rendering him a cripple for life. The boy says Morris told him to go up this ladder to the hole in the wall. Morris says that he did not tell him to go up the ladder, but told him to go around the big tub (pointing between the tubs) to the hole; that after he left Wells he went around into the building, picked up the hose; that before he reached the hole he looked through it and, to his great surprise, he saw Wells walking the plank and trough just before he fell into the vat. The boy says that Morris did not tell him to go between the tubs and that he did not know a person could reach the hole by doing so. The testimony further shows that a man by the name of Brewer was employed as the distiller; that he had general charge of the work carried on; that he was the only person who had the authority to hire and discharge men; that he was at his meal about one-half mile away when the injury occurred; that Morris was the "beer runner," and the pre-

ponderance of the testimony shows that the filling and cleaning of the vats mentioned was in the line of his duty and that it required two persons to perform it; one to push the hose through the hole and turn the water on after the person on the outside had received the hose and placed the end of it in the vat. It was further shown that Morris had no authority to employ or discharge hands.

The court gave the jury many instructions which, in effect, amounted to a peremptory in behalf of the Kentucky Distilleries Company. That is, the court told the jury that before they could find a verdict against it, they must believe from the evidence that William Morris was its employe and had the authority to employ hands to work in and about the distillery. It was error to direct the jury to find for plaintiff, as was done in instruction No. 1, unless they find for defendant under instructions B, C, E, F, I, L or M. All that was contained in those instructions that was proper, was in other instructions given. Instruction F, as an independent instruction, was correct, except wherein it used the words "without the knowledge of Morris." There should have been added, "or his directions." Appellees' counsel claim that the instructions were correct, as Morris, the employe, had no authority to employ hands for it or to engage Wells to help him wash the vats, and, therefore, the relation of master and servant did not exist between it and appellant, therefore, it is not responsible for his injuries. This, as a general rule, is correct, but there are a few exceptions to it. One is when the person injured is an infant, who has not arrived at the age of sufficient intelligence, discretion and experience to enable him to avoid the danger in which he is placed. Appellees say this is what is known as the "Turn Table Doctrine," and that it cannot apply to this case because there are no allegations in the petition to the effect that these tubs were enticing to children and were very dangerous, etc. It is agreed that they were not dangerous to one remaining on the ground and not very enticing. The petition is not insufficient as claimed, for it was alleged that the boy was requested to go over the top of this tub to reach the hose and was not given any warning as to the danger incident to the task. He did not wander around these tubs and was not enticed by the appearance of them to go over them, but did so by the

request of William Morris, the only employe of appellee present at the time. It should also be borne in mind that almost every negligent act done by a servant in the prosecution of the master's business is directly contrary to the wishes and directions of the master. As between a child, innocent of wrong and ignorant of danger, and a master who has placed a dangerous implement under the supervision and control of his servant, it would seem fair and reasonable that the master should bear the burden rather than the child, when the act of such servant causes the child to be hurt by such appliance. The law is well settled that if a master, or his servant, knows that a child too young to appreciate his danger, is in a place of danger and fails to use reasonable care to prevent the child from being injured, the master is responsible. It is not material in the case at bar, how the boy happened to place himself in peril. If Morris had immediate care of the dangerous instrumentality and sent the child into the dangerous place, by reason of which he was injured, there is no reason why the master should not be liable. The liability of a master in respect to such infant trespassers or licensees is in no sense based upon a contractual relation—it arises from a duty imposed by law upon the owner and operator of places and machinery dangerous to young and inexperienced persons, not to injure or permit them to be ininjured by such machinery, after discovering their peril, when same can be prevented by the exercise of ordinary care. Many authorities might be cited supporting these principles. The case of Kentucky Central R. R. Co. v. Gastineau's Admr., 83 Ky., 119, was one where Gastineau, a boy fourteen years of age, was killed while assisting some servants in coupling cars in the railroad company's yards. The railroad company claimed that the boy was not its servant; that the servants who requested the boy's aid had no authority to engage help for it, and, therefore, it was not liable for his death. This is the same principle contended for by appellee in the case at bar, but it is not sound. If it were the court should have peremptorily instructed the jury in the case above cited to find for the railroad company. In reversing and remanding that case this court said:

"We are aware that it has been held in some cases, as, for instance, in Fowler v. Railroad Co., supra, that if the deceased is a trespasser, his being of tender years

makes no difference, because the company is under no duty to him which requires his protection; but, in our opinion, age should be considered upon a question of contributory negligence; and should exercise reasonable care to anticipate and prevent an injury to a child of such tender years as to have little or no discretion, although he may be technically a trespasser. His condition excuses his concurrent negligence. Humane consideration requires such a rule.     *     *     *

"The jury should have been so instructed as to enable them to find, or the court, by a finding, informed whether, from the age of the deceased, he had discretion enough to know his danger and guard against it or not; and, if he had, that then, owing to his being a trespasser, the company was not bound to anticipate and provide against peril to him, but only to avoid injuring him, if possible, after his peril was discovered; but that, if, by reason of his age, he lacked such discretion and knowledge of the danger, that then, if the company, by the exercise of ordinary care by its employes, might have become aware of and prevented it, that then it was bound to exercise it and guard against the injury. Of course we do not mean by this to say that a railroad company is an insurer against accidents to children, and that it is liable for injuries to them which cannot well be foreseen; but if they are of such tender years as to be devoid of discretion, then justice and the dictates of humanity require the exercise of reasonable care to prevent their being placed in danger, even though they may be, technically, trespassers; and this would be lacking if the employes of a company were to switch their trains, knowing that a child of such tender years as to have no discretion was in the immediate vicinity of them."

That case has been cited and approved by the following decisions: L. & N. R. R. Co. v. Webb, 99 Ky., 332; L. & N. R. R. Co. v. Popp, 96 Ky., 99; C. N. O. & T. P. Co.'s Receiver v. Finnell's Admr., 108 Ky., 135; Brown v. C. & O. Ry. Co., 135 Ky., 798; L. & N. R. R. Co. v. Pendleton's Admr., 126 Ky., 605, and Harris v. Southern Ry. Co., 76 S. W., 151.

In the case of M. K. & T. Ry. Co. v. Rodgers, 36 S. W., 245 (Tex.), the court said:

"Whether or not plaintiff was of immature years and so wanting in intelligence that he could not appre-

ciate the danger of getting on the car is a question of fact to be found by the jury. The jury should be given both phases of the question. If the jury should find plaintiff, by reason of his age and want of intelligence, was not capable of appreciating the danger of getting on the car and employees invited or permitted him to get on it, and if it should appear that to ride on such a, car was dangerous to a child of his age and further that the act of getting on same under the circumstances was such as might have been done by a child of his age and intelligence the defendant would be liable to him for his injuries although the employes had been forbidden to permit any one to ride on said car. Disobedience of orders by its servants in such case would not be available to defendant as a defense.''

Appellee's counsel cite the following cases as applicable to the case at bar, which they claim modify the rule above stated. (Paducah Laundry Co. v. Johnson, 122 Ky., 369.) The laundry company maintained an uncovered vat of hot water six feet deep on an open lot, four feet from the side walk. Johnson for a purpose of his own, left the street, went upon the lot and fell into the vat. The court said he could not recover. Johnson was a man of mature years and discretion, and the result would have been different if he had been a child lacking the intelligence and discretion of a man, and children had generally passed around by this vat with the knowledge of the laundry company. Another case cited is Ball v. Middlesborough Town & Lands Co., 24 Ky. L. R., 114. The facts of that case show that a boy climbed into a vacant house through a window, and found some dynamite caps upon the floor, one of which exploded and injured him. This court refused to allow him to recover, saying:

''The house was locked; there was no invitation for any one to enter it, and the circumstances did not impose upon the lands company the duty of keeping the premises safe as against trespassers, or charge it with negligence under the facts shown by the evidence.''

In the case of Monehan v. South Covington R. R. Co., 117 Ky., 772, this court refused to permit a child to recover for injuries, but this was because those in charge of the car did not know that the child was in danger until after he was hurt. They owed the child no duty until after they discovered he was in peril. That

.case is unlike the case at bar for Morris directed the child in this instance to do the thing that was dangerous.

The case of Mobley v. Indian Refining Co., 134 Ky., 822, is also cited, but Mobley, the person seeking to recover, was a grown person, therefore, the principles applicable in his case are not here.

Corrigan v. Hunter, 122 S. W., 132, is the controlling case cited by appellees. In that case Corrigan had one Collins employed at his stables as a trainer of horses. Collins placed Hunter on one of the colts which shied and stumbled throwing the boy to the ground and severely injured him. This court reversed a judgment in favor of the boy because, as it appeared, Collins had a private arrangement with the boy to teach him to be a good race rider and he was to ride for other people for pay and they were to divide the money between them, and Collins was using Corrigan's horse to teach Hunter the trade, without the knowledge or consent of Corrigan. The Gastineau case was not overruled by that opinion and is not in conflict with it.

For these reasons the judgment is reversed and the case is remanded for a new trial consistent with this opinion.