## Eggen v. Hickman, et al.

(Decided May 17, 1938.)

LUKINS & JONES for appellant.

PETER, HEYBURN, MARSHALL & WYATT for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

We are called upon to declare the duty of the owner of property to a prospective tenant and whether there was established a prima facie liability to one for injuries sustained while examining the premises.

The appellees, Baylor O. Hickman and Louise J. Hickman, are the owners of property in the eastern part of Louisville near St. Matthews, in which there is an apartment on the second floor. Paul Semonin, Inc., was the defendants' "representative and rental agent, looking after and renting the property." The appellant, Miss Mamie Eggen, learning that the apartment was vacant, called upon the agent for permission to look at it, and was directed to get the key from a merchant in the vicinity, or possibly in the same building. She went there immediately from the agent's office, obtained the key, and went up the stairs to the apartment. It was about dusk, but not so dark as to require turning on the lights in the stair hall. Having entered the living room, she turned on the lights, as she says, merely to see if they would go on. The light was cast into the next room, the door to which appears to have been

open. However, it was light enough without the electricity. She started through that room to a door on the opposite side to see where it led. Just inside that room and to the right of the doorway Miss Eggen stepped into an opening in the floor and sustained a severe fracture of her hip. The hole in the floor was about a foot square and had been caused by the removal of a hot-air register. It does not appear how long the apartment had been vacant, or when the register was removed, or who had done it.

When the plaintiff had introduced all her evidence, the court gave a peremptory instruction for the defendants, and judgment was entered on the consequent verdict. This ruling was upon the opinion that the plaintiff had accepted the conditions of the premises as they were and was not entitled to recover damages for her injuries without having shown the owners knew or the circumstances were such as to constitute notice to them that the register was out. We think that view of the applicable law was too favorable to the defendants in the proven situation.

There was not only an express invitation for her to inspect the premises, but the visit was to their common interest and for their mutual advantage. She was, therefore, clearly an invitee. Bennett v. Louisville & Nashville Railroad Company, 102 U. S. 577, 584, 26 L. Ed. 235; Leonard v. Enterprise Realty Company, 187 Ky. 578, 219 S. W. 1066, 10 A. L. R. 238. The defendants owed the plaintiff, as an invitee, the duty of being reasonably sure that they were not inviting her into danger and of having exercised ordinary care and prudence to have the premises in a reasonably safe condition. Leonard v. Enterprise Realty Company, supra; Bridgford v. Stewart Dry Goods Company, 191 Ky. 557, 231 S. W. 22; Young's Adm'r v. Farmers & Deposit Bank, 267 Ky. 845, 103 S. W. (2d) 667. As stated in the latter case (page 669):

"The duty owing by an owner or person in possession to those who come on the premises by invitation, express or implied, is not to insure his safety, but it is to use ordinary care to have the premises in a reasonably safe condition. He must exercise a protective vigilance to see that his invitees are not led into a trap or dangerous condition known, or which ought to have been known, to him, but

hidden from the other or so concealed that he could not observe it in the exercise of ordinary care for his own safety.''

The Restatement of the Law of Torts seems to classify one occupying the position of the plaintiff as a ''business visitor.'' Section 332. Section 343 of the Restatement is as follows:

''A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereof, if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility.''

Commenting upon this statement, it is said:

''Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions. * * * Toward the business visitor, the possessor owes the additional duty to exercise reasonable care to make the land safe for the reception of his visitor or, at the least, to ascertain the actual condition of the land so that by warning the visitor thereon, he may give the visitor an opportunity to decide intelligently whether or not to accept the invitation or permission.''

The statement is further amplified as follows:

''A business visitor is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore, a business visitor is not required to be on the alert to discover defects which, if he were a bare licensee, entitled to expect nothing but notice of known defects, he

might be negligent in not discovering. This is of importance in determining whether the visitor is or is not guilty of contributory negligence in failing to discover a defect, as well as in determining whether the defect is one of which the possessor should believe that his visitor would not discover and as to which, therefore, he must use reasonable care to warn the visitor."

Applying this general principle, it was declared in Serota v. Salmansohn, 256 Mass. 224, 152 N. E. 242, 46 A. L. R. 517, that the owner of a building containing flats for rent owes the duty to prospective tenants entering the building to inspect the premises and to keep them in a reasonably safe condition. In that case, one inspecting an apartment for the purpose of renting it caught her foot on a projecting nail in a step leading to the basement and broke her arm. The court said:

"It could be found that the nail rendered the stairs unsafe, and whether the defendant knew or in the exercise of reasonable care ought to have known of this condition was a question of fact."

The judgment for the plaintiff was affirmed.

See, also, the several cases digested in the annotations in 46 A. L. R. 518, particularly that of Sleeper v. Park, 232 Mass. 292, 122 N. E. 315, where a prospective tenant was injured by reason of an unsafe stairway. The note deals specifically with the contributory negligence phase of the case, but the court declared in that case:

"The plaintiff having been expressly invited to inspect the tenement, the defendants were charged with the duty of maintaining it in a reasonably safe condition in accordance with the invitation."

The appellees would escape the effect of most of those decisions with the suggestion that they involved some structural fault in the building, such as a decayed condition, or a weakness or defect in construction, while here the easily removable covering had been lifted out. We do not catch the distinction.

Our case of Leonard v. Enterprise Realty Company, supra, is confidently relied upon by the appellees. It is truly analogous, but quite distinguishable. Briefly stated, the facts were that the plaintiff, late one after-

noon, seeing that a tenant was moving out, procured the key from one of the men in charge of moving the furniture and then obtained permission from the renting agent to look at the apartment. That evening, after dark, he entered the apartment and struck a match which caused a gas explosion, by which he was injured. It was shown that the movers, or another representing the vacating tenant, did not turn off the gas when they disconnected a stove, or, if they did, that some one afterward turned it on. That opinion affirms the principle declared by the foregoing authorities, but the evidence established that the condition causing injury to one inspecting an apartment, with the view of renting it, was created or left by a former tenant or his agents who had just vacated, and positively showed that there was neither knowledge nor opportunity for the owner to have discovered the dangerous condition or make his premises safe. In holding that a directed verdict for the defendant was proper, the court said:

"The negligent act giving rise to the explosion was that of an intruder or of the man in charge of removing the contents from the house, and who were in no wise under the control of or connected with appellee. The first news the landlord's agent had that the previous tenant had vacated the premises came through appellant. The landlord had no knowledge of the condition in which the man had left the apartment, nor did appellee in the short space of time, between 5 p. m. and 6:30 p. m., have an opportunity to discover it. There was no failure on his part to exercise ordinary care. The unfortunate accident was from a cause that could not have reasonably been in the contemplation of the parties or foreseen by them. We do not think any ordinarily prudent man, under the circumstances presented by this record, ought reasonably to have foreseen that such a result would follow the vacation of the premises."

In this case the premises were entirely within and under the control of the owner and his agent. The latter had expressly invited the plaintiff to visit the apartment and had given her the key for that purpose. Nobody had access to the apartment but the owners or their agents. The jury could well have found from the circumstances that by exercising ordinary care and diligence the owners should have learned that the heat-

ing register or cover over the hole in the floor had been removed and that a dangerous trap existed on their property. The difference is that it was affirmatively established in the Leonard Case that there had been no opportunity for the owner to examine the premises or to know that gas was escaping in the building. Miss Eggen took the premises from the owners and had the right to rely upon the owners having them in a reasonably safe condition. But Leonard took the premises over from the vacating tenant and accepted them as he had left them.

We are of opinion that under circumstances disclosed in this case the duty of the owners was greater than merely to exercise ordinary care to discover the dangerous condition. Their duty was to exercise ordinary prudence and diligence to have the premises in a reasonably safe condition for the invitee's inspection. Under such conception of the law, it seems to us that the plaintiff proved a prima facie case and was entitled to go to the jury.

Although the plaintiff could not abandon all care for her own safety, we think the question of whether she was contributorily negligent was also one to be submitted to the jury.

The judgment is therefore reversed.