## Pinnell v. Woods.

(Decided Nov. 9, 1938.)

KENNEDY & KENNEDY for appellant.

W. RUSSELL JONES for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Polly Woods was severely injured on June 18, 1936,

by the falling of a large wall cabinet from its base in a business house owned by J. H. Pinnell, in Somerset, Kentucky. She sued Pinnell charging gross negligence in permitting the cabinet to remain in an unsafe condition. The jury gave a verdict in her favor in the sum of $500 and judgment was entered accordingly. Pinnell has appealed.

At the time Polly Woods was injured the building was occupied and being used by Circle No. 4 of the Somerset Methodist Church, with the permission of appellant, and without charge, for the purpose of preparing for a rummage sale advertised to open the following day; however, sales were made to several parties, including appellee on June 18th. Appellant had turned over the key to the building to Mrs. Beulah Waddle, chairman of Circle No. 4.

At the time Pinnell purchased the building in 1913 it was being used by John Baldwin for the purpose of operating a confectionery, and was so used by him until two or three months prior to the time Polly Woods was injured. The cabinet which fell on appellee was in the building in 1913, and appears to have remained there in the same place, against the wall, until the time of the accident. Pinnell took charge of the building when Baldwin moved out. A witness testified that he had cleaned the building out after that time and that the wall cabinet was standing against the wall at the right of the door. The building appears to have been vacant following the time Baldwin moved out until Circle No. 4 began their rummage sale, except for a few days just prior to their entrance when it had been used by the Business and Professional Women's Club of Somerset, with the permission of Pinnell, for the purpose of conducting a rummage sale.

The wall cabinet in question was five and one half feet high and stood on a three foot base against the wall. The base extended about 18 inches from the wall, and the cabinet extended out approximately one foot from the wall. The evidence is not clear as to how long the cabinet was, but it appears to have run some twenty or more feet along the wall and was in sections, since there is testimony to the effect that one section did not fall at the time Polly Woods was injured. There is no testimony in the record to the effect that anyone knew

the cabinet to be defective or in an unsafe condition, but on the contrary, witnesses testified that they had seen the cabinet standing in the same position on several occasions, and that they noticed no defects in it and that it appeared to be in a safe condition. It had stood in the same place for more than thirty years. Appellee attempted to show that the cabinet should have been fastened to the wall, and one witness who appeared on the scene immediately after the accident said that it looked like the cabinet had pulled loose, and "they was some nail holes or screw holes, it looked like." Appellant contends, however, that the cabinet was of the type that stood against the wall without being fastened to it, as it had done for more than thirty years. Glenn Vaughn, who testified that he had painted the building some time after Circle No. 4 finished their rummage sale, said that when he painted the part of the wall where the cabinet had stood there were no nail holes or screw holes or blocks of any kind there.

Vaughn testified further that he had examined the section of the cabinet which fell on Polly Woods since the accident and that there was a new roofing nail driven on one end of it and a finishing nail on the other end, and that there was a brown string about four times as big as an ordinary twine string around the finishing nail. Appellant testified that there were nails driven in the ends of the section of the cabinet which did not fall, and that on one side a string was hanging to a nail. Another witness testified that, while in the building on June 18th, she noticed some strings across the room, but that she did not know what they were tied to. On this point Polly Woods testified as follows:

"Q. 8. Did you see any strings or ropes attached to it? A. They was some ropes that went through that way (Illustrating), they was some clothes on them.

"Q. 9. Were there any ropes attached to this cabinet that fell on you? A. I don't know whether they was any fastened to it or not."

Appellant urges reversal on several grounds. Since the record does not disclose any failure on the part of Pinnell, the owner of the building in which the accident occurred, to keep his premises in a reasonably safe condition, the trial court erred in failing to give a peremp-

tory instruction in his favor. Only this question will be discussed herein.

The relation between Pinnell and Circle No. 4 was clearly that of landlord and tenant. The following quotation from Alexander v. Gardner, 123 Ky. 552, 96 S. W. 818, 29 Ky. Law Rep. 958, 124 Am. St. Rep. 378, covers this point [page 819]:

> "If a tenant has the right to enter upon the premises granted for a specified purpose, and to this extent may enjoy them, and he does this in subordination to the title of the owner and with his assent, and, as a consideration, pays money or other thing of value, or even without the payment of any consideration, the relation of landlord and tenant is created. The reservation of rent is not essential to create the relation, although it is a usual incident of tenancy."

It is the general rule that the landlord is not liable for the negligence of tenants in the use of leased premises. See Farmer v. Modern Motors Company, 235 Ky. 483, 31 S. W. (2d) 716; J. E. M. Milling Company v. Gaines, 231 Ky. 779, 22 S. W. (2d) 274; Wells v. Kentucky Distilleries & Warehouse Company, 144 Ky. 438, 138 S. W. 278. Appellee urges that the rule followed in the cases of Mitchell's Adm'r v. Brady, 124 Ky. 411, 99 S. W. 266, 30 Ky. Law Rep. 258, 13 L. R. A., N. S., 751, 124 Am. St. Rep 408, and Goldberg v. Wunderlich, 248 Ky. 798, 59 S. W. (2d) 1018, should apply, but an examination of the facts in these cases clearly distinguishes them from this case. In the Mitchell Case the landlord and tenant were held liable for the death of a person caused by the falling of an iron water pipe constructed on the side of the building which abutted upon a sidewalk. The pipe fell because its fastenings got out of repair and pulled out of the wall. In the Goldberg Case the landlord was held liable for injuries resulting from a fall caused by defective cellar doors in a sidewalk.

In this case the negligence, if any, was that of the tenant and not the landlord, because the only reasonable inference to be drawn from the evidence is that the weight of articles hanging on strings attached to the cabinet caused it to fall, and, as set out herein, the evidence affords no basis for an inference of negligence on

the part of appellant. For the reasons given herein appellant was entitled to a peremptory instruction.

Judgment reversed.