## Lerman Bros. v. Lewis.

March 10, 1939.

PORTER SIMS, Judge.

LAURENCE B. FINN for appellants.

B. S. HUNTSMAN for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Warren Circuit Court based on the verdict of a jury in the sum of $500 in favor of appellee, Miss Eunice Lewis, against the appellants, Lerman Brothers, a partnership operat-

ing a store in the City of Bowling Green. On Saturday night of August 14, 1937, Miss Lewis went into the appellants' store for the alleged purpose of doing some shopping. She was accompanied by her niece, Mrs. Jane Harvey, and the latter's two-year-old daughter. Miss Lewis says that she intended to purchase some hosiery and that her niece intended to purchase some underwear and hosiery. The counter where these articles were sold was near the middle of the store. Miss Lewis or her niece inquired for Miss Nell Whitney, who was accustomed to wait on them. They did not disclose to anyone that they intended to make a purchase. They were told that Miss Whitney was in the back of the store and they proceeded on toward the rear of the establishment.

When they reached the rear of the store, they again inquired for Miss Whitney and they were told that she was in the alteration room. There is a partition ten or twelve feet high with a door in it across the back of the store. Behind this partition there is a cloakroom for the use of the employees of the store, a space for the storage of linoleum, a sewing machine and workshop referred to as the "alteration room" and a stairway leading down to the basement. Miss Lewis testified that "we asked if it would be all right for us to go back, and they said yes, or we never would have gone." Mrs. Harvey and her little girl went through the door in the partition and some little time later Miss Lewis followed her. There is a disagreement as to how long Miss Lewis waited before going into the back of the store but it must have been several minutes because both Mrs. Harvey and Miss Whitney indicate that they had been talking for some moments before Miss Lewis came back.

Miss Lewis walked through the door and turned to the right and fell down the steps leading to the basement. She was seriously injured and brought this action to recover damages therefor. No complaint is made of the amount of the verdict and the only serious question necessary to consider is whether or not, on the facts adduced, appellants were entitled to a peremptory instruction. This, in turn, depends upon whether or not the appellee was, at the time of her injury, an invitee, to whom appellants owed a duty of maintaining their premises in a safe condition, or a mere licensee who must take the premises as she finds them.

It appears that customers who wished to purchase

linoleum were sometimes taken to the back room, always in company with a salesman, for the purpose of examining the stock. It also appears that occasionally colored customers were escorted to the cloak room for fittings, or alterations of garments purchased, instead of using the fitting rooms reserved to white patrons in the front of the store. The proof is all one way to the effect that customers generally did not go behind the partition and there was no implied invitation into that part of the store. Miss Lewis, herself, says that she had never been back there before and secured permission to go back or else she "never would have gone." We accept as true that Miss Lewis went into the store for the purpose of buying hosiery. Certainly she was an invitee at the time she came in. Did she lose that character when she went behind the partition for the purpose of seeing Miss Whitney?

The duty of a shopkeeper to keep his premises in reasonably safe condition for invitees is, of course, coextensive with the invitation. The invitation may be limited as to time, or space, or manner of use, and the invitee must remain within the bounds of the invitation if he is to claim the benefit of its protection. In Wall v. F. W. Woolworth Company, 209 Ky. 258, 272 S. W. 730, Mrs. Wall had entered the Woolworth store to purchase some clothesline. The counter at which it was sold was at the rear of the store and the line was on a spool hung overhead and near the end of the counter. The line was entangled on the spool and Mrs. Wall attempted to aid the saleswoman in untangling it. She stepped around the end of the counter and through a small swinging gate. In doing so, she fell down a stairway behind the counter. The judgment of the trial court, based on a directed verdict for the defendant, was affirmed and this Court quoted with approval from the opinion in Keeran v. Spurgeon Mercantile Company, 194 Iowa 1240, 191 N. W. 99, page 100, 27 A. L. R. 579, page 583, wherein it was said:

"Even though a person is an invitee upon the premises of another, the duty of the owner of the premises to maintain the same in a safe condition applies only to that part of the premises that [is] appropriated by the owner as a place in which his business is conducted and the necessary and proper part of said premises reasonably to be used by the invitee to gain access to the portion of the premises

used for purposes of business. The invitation, express or implied, to conduct business upon the premises, is an invitation to use the premises in the ordinary and usual manner in which business is conducted thereon, and it does not render the owner or occupant of the premises liable for negligence where the invitee is using a portion of the premises to which the invitation has not been extended, either expressly or impliedly, and which the occupant would not reasonably expect the invitee to use in connection with the conduct of business on said premises.''

In Cumberland Hotel Operating Company v. Hartman, 264 Ky. 300, 94 S. W. (2d) 637, the same rule was applied to a guest at a hotel who wandered into the service quarters and fell down the shaft of a freight elevator. The cases are legion on the question and there is remarkably little conflict as to the principles applicable. The difficulty and the contradiction between the cases arises from the application of the principles to an infinite variety of fact situations.

The line between invitation and permission is often shadowy and indistinct. This, however, does not relieve us of the responsibility of expressing our own best judgment as to the side of the line on which this case must fall. There is no divergence in the proof on this score and we must therefore determine the legal effect of the established facts.

It is plain, we think, that the implied invitation of appellants to their customers was limited to the use of the portion of the store in front of the partition except in the two rare instances above described of persons buying linoleum and of colored women using the cloak room for fittings. Appellee does not claim to be within either of the excepted classes or to have followed the manner in which either of these excepted classes made use of the work rooms. So far was she from coming within any implied invitation that she said, herself, that she ''never would have gone'' without permission. We may therefore eliminate the theory that this was a portion of the store which customers generally were invited to use. There was no implied invitation to go there and, so far as this record discloses, only a mere permission granted upon request.

The fact that appellee was in search of a particular

338

saleswoman from whom she anticipated making a purchase does not seem to us to be material. The extent of the invitation must depend on the holding-out of the storekeeper and not upon the undisclosed motives of the claimed invitee. The very fact that stores generally, and this store in particular, have portions of their buildings reserved for employees demonstrates that the invitation to customers does not extend to permission to search private portions of the premises for a particular saleswoman when she is away from the store proper. If this privilege were accorded customers generally then every nook and cranny of the establishment. would be open to the public and a duty placed upon storekeepers out of all proportion to what the law has hitherto deemed proper. We must measure the rules of law by their general operation howsoever unfortunate their application to a particular case may appear to be.

When appellee went to the work rooms it was from her own caprice and with permission, but not as the result of an invitation, express or implied. We are bound to conclude, therefore, on the evidence before us, that she was but a licensee who took the premises as she found them. It follows that appellants were entitled to the peremptory instruction for which they asked.

Other questions are argued which are unnecessary to be considered at this time. They are reserved.

Judgment reversed.