## Shoffner v. Pilkerton.

Dec. 11, 1942.

408

Mather & Mather and Layman & Layman for appellant.

J. E. Wise and J. W. Hodges for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

On April 15, 1940, appellee and her husband entered into a written contract with appellant, a building contractor, for the erection of a residence. On June 30, before the completion of the residence, "and while in the possession and control of" appellant, so the petition states, appellee went into the building for the purpose of making suggestions relative to some closets. She asserts that appellant and his employees had negligently and carelessly left a hole in the floor, covered with rock lathe, and when she stepped on the covering it gave way.

Appellee sought recovery for medical services, hospital bills, etc., and to compensate her for physical and mental pain, the sum total of $5,800. In answer, in one paragraph which appellant both denies and affirmatively pleads, it was denied that appellee at the time she was injured was invited on the premises, and particularly denies she was invited into the room where the accident happened, but that appellee had entered the room without the knowledge or consent of defendant or any employee, or that he or any of them knew she was in the room until after the accident. Appellant then pleads contributory negligence. A controverting reply joined issue.

Following proof and instruction by the court the jury returned a verdict in favor of appellee in the sum of $1,000; motion for a new trial was overruled and his appeal follows. The sole contention is that the court should have sustained appellant's motion for directed verdict, because under the law, (1) the status of appellee at the time she fell and injured herself was that of

licensee, and if so appellant was only liable for willful acts of negligence; that since appellee had no invitation from appellant to be where she was at the time she fell, he owed her no duty as an invitee. (2) If she was a licensee she could not recover because she was guilty of contributory negligence. It is argued that neither the contract nor related facts show appellee to have been more than a bare licensee, if that.

Mrs. Pilkerton went to the building on the afternoon of June 4, as she said to supervise the placing of shelves in the closet and cabinet; that Mr. French, one of the carpenters, working on the cabinet, called her and asked about the shelves, and she went into the building "to show about the location of those shelves;" she first went into the kitchen, then into the adjoining bedroom. She had theretofore complained to appellant that the place for the register into which she fell was in the "walkway from either door." The floor had been laid, and register opening had been cut out. She says when complaint was made appellant agreed to change or move the register. At the time she fell she did not know that the proposed change had not been made, or that a piece of rock lathe had been placed over the hole. Her foot went into the register opening, and the fall caused a fracture of the left arm and bruises about her body.

On cross-examination it was shown that she was around the premises frequently after construction got underway, and that she often "inspected" the work as it progressed; that she, with appellant, had located the openings for the furnace pipes before the time of the accident, and that thereafter she had seen the holes for the pipe openings and had seen this hole before the hardwood floor was laid, but insists that appellant, at her suggestion, had agreed to make a register opening in the bedroom in an entirely different place, and that she did not know that it had not been moved. She said she went into the kitchen and remained a few minutes, and then into the bedroom where Mr. Scott was at work putting the ceiling on the closet. She said to Mr. Scott, "put the shelves where I can reach them." This particular closet was in the middle of one side of the bedroom. She admits that she was not called into the bedroom at "that particular time."

Mr. Pilkerton testified that he had asked appellant

to move the register across the room, and he agreed. A part of the original opening had been cut one-half or three-quarters of the required size in the sub-floor. Appelant said the hole cut in the sub-floor would not bother; he would put the hardwood floor over it, and make the change across the room. The hole was about 10 inches from the wall. It was supposed to go against the wall. Mr. Shoffner told him he wanted Mrs. Pilkerton to come over and talk to Mr. French, the carpenter. After his wife was injured he went into the room and assisted her. "There were scraps of material lying over the floor, and some rock lathe."

Scott testified that he was in the room at the time of the accident, "facing the closet." When Mrs. Pilkerton came in she said she didn't want the shelves too high for her to reach, and she started toward the closet and stepped on some plaster board over the opening and fell through. There were scraps and pieces of lumber over the floor. Mr. Shoffner had told witness he wanted to see Mrs. Pilkerton about the kitchen cabinet, but he had not conveyed the information.

Appellant, a contractor of long experience, said that nothing was said when the contract was signed about supervision, other than contained in the contract and specifications. Mrs. Pilkerton was "on the premises two or three times every day." On the day of the accident he was working in the basement; French, Scott and others working upstairs or around the building. He did not know that Mrs. Pilkerton was about the premises that afternoon. He had not told Mr. Pilkerton prior to that afternoon that he wanted his wife to come to the building. He said that Mrs. Pilkerton had, with him, located the register opening about two weeks before the accident; that when the sub-floor was laid these openings, 8x10 or 10x12 were in the sub-floor. After this particular opening was marked off, appellant told Scott that they had "hit a joist," and Mrs. Pilkerton was called and told it would have to be moved over about 6 inches, and she agreed. This was two weeks before the accident, and she was in that room at least twice a day during the two weeks. He said rock lathe had been laid over the hole when Mr. Pilkerton was present, and he helped cover the holes. There was some argument about the replacement of the opening, but appellee told him to leave it where it was. He was positive that he had never agreed

to remove the register across the room over by the window, and denied that he told anyone he wanted to see her about the cabinet in the kitchen.

The broad question presented here, as to whether or not Mrs. Pilkerton was at the time of the injury an invitee, is narrowed to the contention that while she may have been invited into the kitchen for the purpose of giving directions about the cabinet shelving, she was not invited into the adjoining bedroom where the accident occurred. Cited as authority is the case of Wall v. F. W. Woolworth Co., 209 Ky. 258, 282 S. W. 730, where we held that it was the duty of a merchant to keep safe only that part of his premises where customers are invited; and Cumberland Hotel Co. v. Hartman, 264 Ky. 300, 94 S. W. (2d) 637, to the same effect.

Following the reasoning in the above and similar cases cited, it is argued that at the utmost Mrs. Pilkerton was only a licensee, hence appellant was only liable for any injury to her arising by his willful act. As to an invitee the rule is that the owner owes to such the duty of exercising reasonable care and prudence to see that the premises are in reasonably safe condition.

We said in Leonard v. Enterprise Realty Co., 187 Ky. 578, 219 S. W. 1066, that the distinction between licensee and invitee is shadowy and indistinct; the principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is either for the pleasure or to the benefit solely of the person using it. See also Louisville & N. R. Co. v. Snow's Adm'r, 235 Ky. 211, 30 S. W. (2d) 885; Eggen v. Hickman, 274 Ky. 550, 119 S. W. (2d) 633.

Appellee contends that Mrs. Pilkerton, at the time of injury, was an invitee, first because the contract provided that appellant was ''to install kitchen cabinet as per details to be furnished; furnish and install shelving and hanging rods in closets at owner's direction,'' and Mr. Shoffner admits that the bedroom closet was one thing Mrs. Pilkerton had the right to supervise ''if she wanted to.''

It may also be concluded from the proof that some one of the employees of the contractor had let Mrs. Pilkerton know that work was in progress on the cabinet, and it is not unreasonable to suppose that she, by casual

observation, could ascertain that Scott was working on the bedroom closets. The proof of appellee, introduced to support the defense of contributory negligence, made it appear that Mrs. Pilkerton was a daily visitor to the premises, or to some portion of the building.

There is no evidence that she was asked to refrain from coming into the building, or that at any time objection was made to her visits. An invitation to enter a building may be expressed or implied. The first is where the invitation is expressly extended. An implied invitation arises when the owner or occupant does something or permits something to be done which fairly and reasonably indicates to the person entering the premises, that his presence is consistent with the intentions and purposes of the occupant, and leads the one entering to believe that the use is in accordance with the design or purpose for which the place is adapted, and to be used in mutuality of interests. We find no difficulty in concluding that appellee occupied the position of an invitee.

In order to uphold appellant's contentions that the court should have directed a verdict in his favor, we would have to decide that Mrs. Pilkerton was not an invitee, or that being such or a licensee, she was guilty of contributory negligence, both as matters of law. Under the proof, as we read it, there was sufficient evidence on both points to carry the case to the jury, and both issues were submitted on what appear to be well prepared instructions clearly defining the law of the case, and about which no complaint is made.

Upon these issues the jury determined both contrary to appellant's contentions. This being true we see no reason why the judgment should be set aside.

Judgment affirmed.