# CITY OF MADISONVILLE v. POOLE.

Court of Appeals of Kentucky.
March 28, 1952.

Rehearing Denied June 20, 1952.

**134**

Carroll Morrow, Madisonville, for appellant.

Waddill, Laffoon & Nichols, Madisonville, for appellee.

STANLEY, Commissioner.

The appellee, Mrs. Bonnie M. Poole, was injured by slipping on ice and falling as she was about to enter a door of a clubhouse owned and operated by the appellant, City of Madisonville. She recovered judgment for $7,500 damages.

For a consideration paid the city, organizations and individuals use the facilities of the clubhouse for dances, parties, etc. It had been engaged on that evening, March 11, 1948, by the hostesses of a social club to which Mrs. Poole belonged. The city does not challenge the proposition of proprietary liability for negligence of its employees at the clubhouse but denies negligence.

The key to the case is the character of the relationship between the plaintiff and the defendant, for upon the classification rests the degree of care and legal liability of the defendant. Sometimes the process of elimination is helpful in determining the status of a party.

Though the owner rented the facilities for a few hours to the hostesses of the party, or perhaps to the social club through them, the transient and limited use may not be regarded as establishing the relationship of landlord and tenant, as is argued by the appellant. The owner continued in the exclusive legal possession and control, and had supervision and the duty of maintaining the premises all the time. The accident happened on the porch of the building and not within the rooms being used. Pinnell v. Woods, 275 Ky. 290, 121 S.W.2d 679, does not support the view of tenancy because of distinguishing facts. There a church society had been given the privilege of using an empty storeroom for a rummage sale. It had been given complete control of the premises, so that the relationship of landlord and tenant was created, hence, the owner was held not responsible to a customer injured by being struck by a heavy cabinet which was caused to fall by the negligence of the tenant society.

The plaintiff was not a licensee, for the marks of such relationship are missing. They are, in brief, presence on the property of another (a) as a matter of privilege by virtue of the possessor's consent, or (b) a gratuitous licensee, for one's own convenience, pleasure or benefit pursuant to permission or acquiescence, express or implied, and without interest, profit or benefit to the possessor of the place. Restatement of the Law of Torts, §§ 330, 331;

Kentucky & W. Va. Power Co. v. Stacy, 291 Ky. 325, 164 S.W.2d 537, 170 A.L.R. 1; Shoffner v. Pilkerton, 292 Ky. 407, 166 S. W.2d 870.

The privilege of using the premises for a consideration and the nature of plaintiff's presence created a closer relationship. The modern delineation of an invitee or business visitor, is "one who is invited or permitted to come upon the land of another for a purpose directly or indirectly connected with the business which the possessor conducts thereon, or for a purpose which is connected with the visitor's own business, which itself is directly or indirectly connected with any purpose, business or otherwise, for which the possessor uses the premises." Kentucky & West Virginia Power Co. v. Stacy, 291 Ky. 325, 164 S.W. 2d 537, 539, 170 A.L.R. 1, citing Restatement of Law of Torts, § 332, p. 897. Descriptions in different language are given in Eggen v. Hickman, 274 Ky. 550, 119 S.W. 2d 633; Shoffner v. Pilkerton, 292 Ky. 407, 166 S.W.2d 870; A. L. Dodd Trucking Service v. Ramey, 302 Ky. 116, 194 S.W. 2d 84. The relation in this case is quite analagous to that of a hotel and guest. If the plaintiff be regarded as a guest of the ladies of the club who, as hostesses, made the arrangements and paid for the privilege of using the clubhouse for the evening, then the relationship was like that of a visitor of a guest in a hotel. Whether guest or visitor of a guest, she must be deemed to have been an invitee of the city, although in this connection the term "invitee" is sometimes but a legal fiction, or legal extension of the literal meaning of invitation. The agent of the city who rented the facilities knew that members of the club other than those who specially procured the use would be in attendance. It was his duty, as he testified, to prepare and maintain the premises for the party. We hold the plaintiff was an invitee.

■■ It is well recognized that an invitee or business visitor occupies a favorable position in respect of the legal duty owing him. The owner or possessor of the property owes him the active, positive duty of keeping those parts of the premises to which he is invited, or may reasonably be expected to use, in a condition reasonably safe for his use in a manner consistent with the purpose of the invitation. If the possessor knows, or by the exercise of ordinary care or reasonable diligence could discover a natural or artificial condition which, if known, he should realize involves an unreasonable risk to the invitee and does not remedy the condition or serve fair warning of peril, he is negligent. Eggen v. Hickman, 274 Ky. 550, 119 S.W.2d 633; Montgomery Ward & Co. v. Hansen, 282 Ky. 188, 138 S.W.2d 357; Lyle v. Megerle, 270 Ky. 227, 109 S.W.2d 598. In 38 Am.Jur., Negligence, § 96, on authority of Pettyjohn & Sons v. Basham, 126 Va. 72, 100 S.E. 813, 38 A.L.R. 391, it is cryptically said: "Summarily stated, to the extent of the invitation given a property owner owes to an invitee the duty of prevision, preparation and lookout."

We consider the contentions of the appellant of exclusion from the application of the foregoing law of responsibility.

■ 1. The appellant denies liability for the reason the appellee fell at a place not covered by the invitation. There is no doubt that liability to an invitee is coextensive both in respect to the purpose and place contemplated. That includes the places patrons or invitees ordinarily and customarily go and the approaches thereto. Smith v. Trimble, 111 Ky. 861, 64 S.W. 915; Cumberland Hotel Operating Co. v. Hartman, 264 Ky. 300, 94 S.W.2d 637; Lerman Bros. v. Lewis, 277 Ky. 334, 126 S.W.2d 461. The claim of exclusion rests upon the proposition that the guests on this occasion were not expected to enter the building through the front or west door but to enter through the south or side entrance. The side door opened on a porch and into a corridor which is to the rear of the room where the party was being held. On this occasion the side porch light was on and the door unfastened. Most of the guests went in that way. At the front or west entrance there are two doors. One opens from a porch into a vestibule and the other directly into the clubroom. The driveway runs along both entrances, so one is as conveniently accessible as the other. The front light was not on, but it appears ample

light was afforded through the windows and panels of the doors. After parking their car and seeing the guests who had already arrived sitting around the fire in the well lighted clubroom, Mrs. Poole and her companions went on the west porch to the main entrance. They found the door to the vestibule fastened and then went to the door leading into the club room. It too was fastened, but one of the party inside opened the door for them. As she was following the other couple into the room, Mrs. Poole slipped on a small sheet of ice at the threshold.

The former custodians testified their orders were to have these front doors unlocked when parties were to be given and that all the doors were unfastened for use on such occasions. Jack Ashby succeeded them in January, 1948, two months or more before the accident. The mayor of the city testified there had been no change in the rules and regulations. Three of the hostesses talked with the custodian that afternoon and nothing was said with reference to what doors should be used. Several witnesses testified that they had used both entrances on other occasions, both day and night. Mrs. Poole had been at the club only twice before and had gone in the front door on both occasions. One of the hostesses had gone in that way that evening just before Mrs. Poole and her party arrived. The custodian had let in a deliveryman of soft drinks for the party through the front entrance that afternoon.

The defendant's evidence on this point is that no person had used the front doors for two months before the accident, and that the facilities had been used on 10 to 25 occasions during this period.

The custodian had not prepared the front entrance for visitors, but he had not indicated by sign or statement that it was out of bounds and should not be used. We cannot regard the absence of the porch light as necessarily constituting exclusion, and the fact that the doors were fastened could not, of course, have been known until tried. The door had been opened when the plaintiff fell. There was nothing extraordinary or unusual in the plaintiff and her companions going there. The situation is very different from a case where an invitee went to a part of premises to which he was not invited or where he ought not to have gone, such as portions of the building reserved for the exclusive use of the occupant and his employees, and the public was not expected or wanted there. Cumberland Hotel Operating Co. v. Hartman, 264 Ky. 300, 94 S.W.2d 637, and Lerman Bros. v. Lewis, 277 Ky. 334, 126 S.W.2d 461, are typical cases of that class. Here the place of the accident was a prominent part of the premises to which the plaintiff was invited. It was designed and intended for such use. Guests usually go to the front door rather than the side door of houses to which they are invited or welcome. It cannot be said as a matter of law that one should not enter that way in the absence of directions to enter another way.

We think it is sound law that "if an invitee does not go beyond that part of the premises to which, as the situation reasonably appears to him, the invitation extends, he cannot be held to have become a mere licensee because, as a matter of fact, the purposes of the invitation could have been fulfilled without going on such part of the premises." 65 C.J.S., Negligence, § 48, p. 538. It seems to us the character of the premises and their use, together with all the other circumstances, imported "knowledge by the defendant of the probable use by the plaintiff of the defendant's property so situated and conditioned as to be open to and likely to be subjected to such use." 38 Am.Jur., Negligence, § 97. We think it could be reasonably anticipated that some of the guests would believe the entrance was for their use and would use it, so that they were entitled to protective vigilance on the part of the defendant for their reasonable safety.

2. Passing the argument of nonliability because of insufficient evidence to show the appellant was negligent in causing the ice to accumulate, (as if the plaintiff were a licensee) we consider the claim that the appellant did not know and could not, in the exercise of reasonable diligence, have known of its presence, hence, is excusable.

It is undisputed that the plaintiff slipped on a sheet of ice 10 or 12 inches wide on the porch, right at the doorway she was entering. This was back in the shadow under the ceiling of the porch. The weather was cold and rainy that day and there was a thin sheet of snow and ice on the ground. Some had melted about noon, causing a dripping from the roofs, but it had turned cold as night came on. There was some snow and ice on the side steps. This is the evidence for the plaintiff. The evidence for the defendant that those conditions did not prevail in their entirety and the weather was not freezing may not be considered on the question of whether it was entitled to a peremptory instruction for the evidence must be viewed most favorably to the plaintiff.

There is no evidence that the custodian or other representative agent of the owner had actual knowledge of the presence of the ice. The custodian testified that he recognized the party had the right to use all the premises except the kitchen, golf room and his own living quarters, and that it was his duty to prepare the premises in proper condition for the party. He had prepared the side entrance for use, but had not inspected the front entrance or prepared it for use because he had not expected the people to use it and did not think there was any ice on the front porch. Under the conclusion that the plaintiff was an invitee on this part of the premises, we think the circumstances of the weather and the icy conditions presented a question for the jury whether the defendant, in the exercise of reasonable care and diligence, should have known of the unsafe condition at the front door and have remedied it. See Lyle v. Megerle, 270 Ky. 227, 109 S.W.2d 598.

3. The court properly sustained a demurrer to the defendant's plea of assumed risk, and did not err in failing to instruct on such an issue. The doctrine of assumption of risk "does not constitute a defense as to one to whom the owner is under a duty to maintain the premises in a safe condition where the owner's failure to do so has created a situation in which it is reasonably necessary to undergo a risk in order to protect a right. Restatement of the Law, Torts, § 893." Seelbach, Inc., v. Mellman, 293 Ky. 790, 170 S.W.2d 18, 19. The court instructed on contributory negligence.

Perceiving no error prejudicial to the defendant, the judgment is

Affirmed.

CAMMACK, C. J., and SIMS, J., dissent.

SIMS, Justice (dissenting).

Because I believe the majority opinion completely overlooks the significance of the controlling facts, and fails to apply the settled law governing a case of this kind, I feel impelled to set forth briefly my reasons for dissenting.

I. The opinion states, and there could be no disagreement on the proposition, that appellant had the positive duty of keeping those parts of the premises to which appellee was invited, or could reasonably be expected to use, in a reasonably safe condition. The irrefutable and dominant fact in the case is that appellee was neither invited nor could reasonably be expected to use the entranceway within which she met with an accident.

The front porch was not lighted. Both doors were securely locked. The proper entrance was lighted, open and available. Even if we assume appellee was invited to, or could reasonably be expected to use the darkened front porch, or try to enter the building there, *the locked doors could mean nothing else but that the invitation extended no further.* The controlling circumstance is not that appellee had a perfect right to come upon the porch or even attempt to make her entrance through the doors which she found locked. It is that the accident happened *after* some third party, in no respect the agent of appellant, upon appellee's inducement, changed the physical condition of appellant's premises.

The place where she slipped was on or at the doorsill, which the management had positively sealed off from use by securely locking the door. She was not invited and

could not have been expected to use the particular place where she slipped. The majority opinion suggests appellant should have posted a warning sign (perhaps in neon lights) if it did not intend for her to enter as she attempted to do. It approaches the fantastic to require appellant, for its own protection, to give special notice advising appellee not to enter this locked door but to avail herself of the obvious entrance which had been lighted and prepared for her use. A locked door much more effectively than any sign fairly shrieks, "you are *not* invited to enter this way."

By no acrobatics of reasoning can we vault the inevitable conclusion that appellee was not invited and could not reasonably be expected to gain access to the building through the locked door. Consequently, apppellant could not have been negligent in failing to make a minute inspection for an icy condition around the doorsill where appellee slipped.

II. Even assuming, by ignoring every single pertinent physical fact in the case, that appellee was actually invited to gain entrance through the locked door (by procuring some third party to open it) the majority refuse to apply a settled proposition of law which governs this case. That is: One in control of premises to which others are invited is required to use ordinary care to correct a dangerous condition not created by him *only* in the event: (1) he has actual knowledge of it; or (2) the condition has existed for such a length of time that, exercising reasonable care, he should know of it. See Restatement, Torts, § 343; Kroger Grocery & Baking Co. v. Spillman, 279 Ky. 366, 130 S.W.2d 786; and Montgomery Ward & Co. v. Hansen, 282 Ky. 188, 138 S.W.2d 357.

There is not a line of proof in the record with respect to the origin of this ice formation, nor when it developed. The freezing may have taken place five minutes before appellee arrived. On what basis therefore, since admittedly appellant's agents did not know of the condition, could a jury possibly find that the condition had existed so long that they should have known of it? The opinion states: "There was some snow and ice on the side steps." I find no testimony to that effect in the record. Mrs. Lutes testified that when she went out to the clubhouse in the afternoon there was some snow and ice on the steps of the side porch. Significantly this witness, who assisted appellee immediately after she had fallen in the doorway (she was on the floor, not on the porch), testified positively that there was no ice anywhere on the porch.

This was a covered porch, and no explanation is given with respect to the source of the water that formed the ice strip (if there was one). The most reasonable guess would be that the warm clubroom caused moisture to condense on the glass panel, which froze sometime after it descended to the doorsill. Anyhow, it is utterly speculative when this particular condition was created and how long it had existed.

Appellee complains that in a case of this sort it would be extremely difficult to prove how long the condition existed. While we sympathize with her predicament, the same obstacle was present in the two cases cited above. We must remember that appellant was not an insurer (although the majority decision in effect makes it one), and the burden was upon appellee to prove that appellant negligently violated a duty which it owed her. Since the latter had no duty to discover the icy condition unless it had existed long enough for appellant to have a reasonable opportunity to discover it, she must show (rather than ask the jury to speculate) some continuity of the condition. The majority opinion does not mention the above cited cases of Kroger Grocery & Baking Co. v. Spillman, 279 Ky. 366, 130, S.W.2d 786, and Montgomery Ward & Co. v. Hansen, 282 Ky. 188, 138 S.W.2d 357, much less attempt to answer them, although both are directly in point.

III. While it might not be decisive, the opinion fails to discuss appellee's possible contributory negligence as a matter of law. She of course, the same as appellant's agents, knew of the weather conditions. If it is reasonable to say appellant was guilty of negligence in not discovering this particular spot of ice, it would seem that she might well be held guilty of contributory

negligence as a matter of law when she failed to discover and avoid it while gaining entrance through a locked doorway. See Illinois Central Railroad Company v. Sanderson, 175 Ky. 11, 192 S.W. 869, L.R.A. 1917D, 890.

I am authorized to say that Chief Justice CAMMACK joins in this dissent.