# L. E. Meyers' Company v Logue's Administrator.

(Decided February 5, 1926.)

## Appeal from Mercer Circuit Court.

1. Negligence—"Invitee" and "Licensee" Distinguished.—An "invitee" to a place of business is one who goes there, either at express or implied invitation of owner or occupant, on business of mutual interest to them both, or in connection with business of owner or occupant which is there being carried on; while a "licensee" is one who goes on property of another, either by express invitation or with his implied acquiescence, solely in pursuit of licensee's own business, pleasure, or convenience.

2. Negligence—Ordinary Care Required as to Invitee.—One inviting another to his premises for business purposes owes him duty to exercise ordinary care and prudence in having a reasonably safe place in which such business may be carried on.

3. Railroads—Workman Returning to Collect Wages Held "Invitee" to Whom Operator of Narrow Gauge Railroad Owed Duty of Ordinary Care.—Where decedent quit service of defendant contractor without receiving his wages, there was an implied invitation for him to return and receive such wages, at which time decedent was an "invitee" on defendant's premises, and defendant was required to exercise ordinary care for decedent's safety, to extent that transaction of his business placed him in contact with dangerous agencies on its narrow gauge railroad.

4. Railroads—Lookout Required as to Invitee Using Narrow Gauge Railroad Track as Footway.—Where invitee on defendant's premises had not collected his wages, and had been informed he could not until he went across river, where foreman was and procured a writing from him, and in pursuit of that business was required to use defendant's narrow gauge railroad track as a footway, held that defendant owed him a lookout duty while so engaged.

5. Negligence—Contributory Negligence Question for Jury, Unless but One Conclusion Can be Drawn from Evidence.—Generally question of contributory negligence is for jury, but, where evidence is all one way, and but one reasonable conclusion can be drawn from it, and that conclusion points clearly to fact that accident would not have happened except for such contributory negligence, then question should be taken from jury.

6. Railroads—Contributory Negligence in Using Narrow Gauge Track Held for Jury.—In action for death, caused by work train on narrow gauge railroad track, whether decedent using track was contributorily negligent held for jury.

7. Trial—Instruction on Duty Owed Decedent Held Erroneous Under Evidence and as Omitting Essential Element to Plaintiff's Recovery.—Instruction that, if jury believed decedent was proceeding in usual way to collect his wages, and was directed by defend-

ant's agent to go route he did, and there was no other safe and reasonable route, defendant owed him a lookout duty to warn him of approach of train, held erroneous, where there was no evidence that defendant's agent directed decedent to go any particular route; and plaintiff's right of recovery was nowhere predicated on whether physical conditions made it reasonably necessary for decedent to walk on railroad track.

S.    Railroads—Instructions on Contributory Negligence of Pedestrian Using Track Held Improper.—Instructions that it was decedent's duty to exercise same degree of care for his own safety that it was of engine operatives to avoid striking him, and that, if decedent, by exercise of such care, should have seen approach of train, but failed to do so, and because of such failure was struck by train, though engineer might have failed to exercise reasonable care to prevent collision, plaintiff could not recover, should not have been given.

9.    Railroads—Instruction Required as to Pedestrian's Duty to Look Out for Trains.—Instruction that it was duty of decedent, struck by work train, to exercise reasonable care while walking on track to look out for approaching trains, and, though engineer was negligent, if decedent was negligent to such an extent that accident would not have happened except for such negligence, plaintiff could not recover, should be given.

E. H. GAITHER for appellant.

C. E. RANKIN and R. L. BLACK for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellant was the contractor engaged in the erection of the great dam across Dix river in March, 1924. The dam was being erected a short distance above the mouth of that stream at a point where it is the dividing line between Mercer and Garrard counties. It was an enormous undertaking, and at the time appellant had engaged in the work at that place about 700 employees. On each side of the river it had become necessary to erect and maintain narrow gauge railroad tracks which were used exclusively for the purposes of the erection. On the Garrard county side two of these narrow gauge tracks were erected, and trains ran over each of them every few minutes during the work day. These trains were used chiefly in carrying rock and other material to be used in the erection of the dam. Each of those tracks on the Garrard side ran approximately parallel with the river. The upper track run near to and at points, very

close to the cliffs, while the lower track ran some short distance away between that track and the river.

J. D. Logue and his infant son J. C. Logue, then less than sixteen years of age, were each employees of appellant for some short time before the younger man was run over and killed by a train on the upper railroad track on the Garrard side. During most of the time of their short employment they had been engaged as laborers in the maintenance work along the tracks, and were each, therefore, familiar with the habits and customs about the use of these tracks.

On the 19th of March, the younger Logue at quitting time notified his foreman that he was going to stop work on that day, and his card was signed by the foreman for his time up to and including the 15th of that month, as claimed by the plaintiff, at which time he was notified he could not get his money until the next day. Thereupon he and his father returned to their home at Harrodsburg in a car, and came back the next morning together, the father to continue his work for that day and the son to collect his wages. The evidence of the father is that the foreman at the time the boy notified him he was going to quit told the boy that he could not get his money that day, and would have to come back the next day to get it and had just as well continue at work the next day; but the boy insisted he was going to stop that day, whereupon the foreman signed his card. The evidence shows that the cashier's office opened at one o'clock each day, and remained open as long as appeared to be necessary for the business of that day.

The father and son had for some days been at work on the Garrard side, and the next morning when they came back, as stated, the father crossed over from the Mercer to the Garrard side to go to work, but for some reason his crew was that day laid off, and he then re-crossed to the Mercer side to join his son, who was waiting there to collect his wages. When the son presented his card to the cashier at or about one o'clock, the father and son were together, and the father's testimony is that the cashier declined to pay his son's wages until he got another card and had the same signed by his foreman. The evidence shows that there were two periods of work during each month, from the first to the 15th inclusive, and from the 16th to the last day inclusive; and presumably the card signed the afternoon before by the fore-

man had included only the period up to and including the 15th, and it was therefore necesary for the boy to get an additional card signed by the foreman for the four days from the 16th to 19th inclusive. The father's testimony is that the cashier asked who his foreman was, and upon being informed, said he was over' at the shovel on the Garrard county side, and directed decedent to go there and have the card signed; this conversation took place at the office on the Mercer side. The father and son then left the office on the Mercer side, walked up the river to a swinging bridge, and went across that bridge to the Garrard side for the purpose of going to the shovel and seeing the foreman. That swinging bridge lands right at or near the upper track on the Garrard side, which, as we have stated, ran near to the cliff. The father and son walked on that upper track down the river toward the shovel, and at a point approximately half way from the end of the swinging bridge to the shovel a train coming up behind them on that track ran over and killed the boy, but the father, who at the time was walking a few feet in front of his son, stepped off the track in time to avoid injury.

This is an action by the boy's personal representative against the contracting company and its engineer DeBusk, wherein there is a general charge of negligence as to the management, operation and control of the train resulting in the death, and the further allegation that at the time the decedent was upon the premises and grounds of the construction company at its invitation and direction, and was traveling over its railroad tracks by and with its consent for the purpose of reaching the steam shovel where its foreman was.

The answer was a denial of the material allegations, and in addition a plea of contributory negligence.

The issues were completed by a reply, and upon a trial there was a verdict, upon which judgment was entered, for $7,500.00 for the plaintiff, and this appeal by the corporate defendant results.

At the outset the question arises, what was the status of the decedent on the company's premises at the time and place of his death? Was he an invitee, a licensee or a mere trespasser, or did he still sustain the relationship of employee?

Obviously the relationship of master and servant had been terminated, for the boy had definitely made

known his purpose to terminate the relationship on the afternoon before, and when urged to continue it for one day more had specifically declined to do so.

It is likewise apparent that so far as decedent's presence upon appellant's premises was concerned he was not a trespasser; for the relationship of master and servant having been terminated only the day before, and his wages still remaining unpaid, there was at least a clear implication of an invitation to him to come back thereafter to the defendant's place of business and collect his wages, and the plaintiff's evidence shows he was there for that purpose.

While it has been said by this court that the distinction between an invitee and a licensee is oftentimes shadowy and indistinct, we have found no difficulty under the facts of this case in distinguishing them. An invitee to a place of business is one who goes there either at the express or implied invitation of the owner or occupant on business of mutual interest to them both, or in connection with the business of the owner or occupant which is there being carried on; while a licensee is one who goes upon the property of another, either by express invitation or with his implied acquiescence, not on any business of the owner or occupant, but solely in pursuit either of the licensee's own business, pleasure or convenience. Leonard v. Enterprise Realty Co., 187 Ky. 578, 10 A. L. R. 238; Southern R. R. Co. v. Goddard, 121 Ky. 567.

Manifestly, under the rules laid down in those opinions, the decedent in this case was an invitee as distinguished from a licensee. He quit the service of appellant the afternoon before without receiving his wages, and wholly apart from the express invitation said to have been extended him by the foreman to come back the next day and get his wages, there was an implied invitation for him to return and receive the fruits of his labor, which it was the employer's duty to pay him. It was the duty of one to pay and the right of the other to collect, and as appellant maintained its cashier's office where the work on the dam was in progress, decedent by clear implication was invited there to get his money.

It is the well recognized rule that when one invites another to his premises for business purposes, he owes to him the duty to exercise ordinary care and prudence in having a reasonably safe place in which such business may be carried on. Leonard v. Enterprise Realty Co.,

187 Ky. 578. In this case we have an invitation extended to come upon the premises for business purposes mutually beneficial to both parties, upon which premises at the time there is a great constructive work going on, and upon which there is almost constantly running over the railroad tracks strung along those premises dangerous agencies, and clearly the company owed to decedent a duty to exercise ordinary care for his safety while he was on the premises, to the extent that the transaction of his business placed him in contact with such dangerous agencies.

But it is said for the company that at the time and place of the injury decedent was at a place upon the premises where his business did not require him to be and where the obligation imposed upon it by law did not apply. Obviously this is true, except for the testimony going to show that the cashier had declined to pay at least a part of his wages until he got another instrument of writing of some kind from his foreman who was on the other side of the river; and according to plaintiff's evidence decedent was proceeding to the point where that foreman was when he was killed. The plaintiff's evidence likewise tends to show not only that the railroad track at that point was customarily and constantly in use by the employees of the company, but it tends to show that the path alongside that railroad track sometimes used, was that day wet and slippery, and unfit for use; and that under such conditions it was the universal custom of the employees to use the railroad track as a footway. Clearly if decedent had gone to the cashier's office at one o'clock and collected his whole wages and thereby completed his business with the company which he had been invited to transact, and had thereafter gone upon the railroad tracks for purposes of his own not connected with his business with the company, he would have been a trespasser and the company would have owed him no duty except the humane duty to avoid injuring him after his peril was seen. But he had not collected his wages, and had been informed he could not, according to the plaintiff's evidence, until he had gone across the river where the foreman was, and procured a writing from him and he was in pursuit of that business and following out those directions when he was killed.

In as much, therefore, as decedent was an invitee, and it was the duty of appellant to use ordinary care to

prevent injury to him while he was in the prosecution of his business, it owed him a lookout duty while so engaged which the evidence for the plaintiff tends to show was not maintained.

The first ground for a directed verdict must therefore be denied.

But it is said for appellant that in any event the defendant was entitled to a directed verdict because all the evidence showed that his own negligence brought about his death.

The evidence tends to show that at the time decedent was struck he was standing still on the upper track and facing the lower track and the river, apparently had his attention fastened upon a train that was approaching in his direction on the lower track, and was wholly unaware that there was a train approaching from the rear on the track where he was standing. It likewise tends to show that the train on the lower track, only a short distance from him, was making considerable noise at the time, while the train approaching from his rear was not making so much noise and gave no signal until it was right upon him, and then too late.

The general rule is that the question of contributory negligence is for the jury; but where the evidence is all one way and but one reasonable conclusion can be drawn from it, and that conclusion points clearly to the fact that the accident would not have happened except for such contributory negligence, then and then only, should the question be taken from the jury. It can not be said to be negligence as a matter of law for one walking along a railroad track where persons are accustomed to walk to stop and look at some object of interest. Observant persons in the usual exercise of their faculties often stop wherever they may be walking when attracted by some object of interest. Nor can the fact that he failed to look back until too late, under such conditions, be said to constitute negligence as a matter of law.

We cannot therefore say that decedent was guilty of such contributory negligence as authorized the court to take the case from the jury.

The remaining question is whether the instructions fairly submitted the issues.

Obviously the controlling question in the case is whether decedent was, at the time and place he was killed, where he had a right to be in the prosecution of

his business as an invitee; and whether he was or not, depends upon (1) whether he had been denied his pay until his foreman should sign a card; (2) whether he was at the time going the usual and customary route from the office to the place where the foreman was for that purpose, and (3) whether in so doing it was reasonably necessary for him because of the physical conditions then existing to use the railroad track as a walkway.

The court's first instruction said to the jury that if they believed decedent was proceeding in the usual way to collect his wages, and was directed by defendant's agent to go the route he did to where the foreman was to secure his signature, and if there was no other safe and reasonable route, then the defendants owed him a lookout duty and the duty to warn him of the approach of a train. In the first place there is no evidence that defendant's agent directed him to go any particular route to the place where the foreman was, although the evidence tends strongly to show that he did go the usual and customary route; and in the next place the instruction nowhere predicated the plaintiff's right of recovery upon whether in going that route the physical conditions were such as made it reasonably necessary for him to walk upon the railroad track. The evidence showed that there was a pathway alongside the railroad track, and tended also to show that upon the day in question there had been a rain, and that the path was slippery and dangerous to walk upon, and therefore the question whether it was reasonably necessary for the decedent in the prosecution of his business to so use the railroad track should have been embraced in the instruction.

Upon another trial, in lieu of the first instruction, the court should instruct the jury in substance that decedent was an invitee on the company's premises for the purpose of collecting his wages, and as such the company owed him the duty to maintain its premises in a reasonably safe condition at such places thereon as decedent was required to go in the prosecution of his business; and that if they believed from the evidence that when decedent applied for his pay at the office he was informed it was necessary for him to have his foreman sign a card before he could receive his wages, and that it thereby became necessary for him to go to the place where the foreman was for that purpose, and decedent in going there went by the usual and customary route, and that it

was reasonably necessary, under the physical conditions then existing, for him to walk upon the railroad track in so doing, then the defendants owed him a reasonable lookout duty while he was so using the track, and the further duty to give him a reasonable warning of the approach of the train in time to enable him to avoid a collision with it; and that if they believe defendants failed to keep such reasonable lookout or to give such warning, or both, and as a result of such failure in either respect the decedent, while exercising reasonable care for his own safety, was run over and killed, then they should find for the plaintiff.

No instruction on contributory negligence in the usual form was given, but the court apparently in lieu thereof gave instructions 4 and 5; it was said in No. 4 that it was decedent's duty to exercise the same degree of care for his own safety that it was of the defendant's officials in charge of the engine to exercise to avoid striking him, and that if decedent by the exercise of such care could have seen the approach of the train but failed to do so, and because of such failure was struck by the train, they should find for defendant. Instruction No. 5 said that although the engineer might have failed to exercise reasonable care to prevent the collision with the decedent, yet if the jury believed decedent himself was guilty of negligence as defined in instruction No. — (probably meaning No. 4) they should find for defendant.

On another trial instructions 4 and 5 should be eliminated, and in place of them the usual instruction on contributory negligence to the effect that it was the duty of decedent to exercise reasonable care while walking on the track to look out for approaching trains and keep out of their way; and that although the jury might believe from the evidence the engineer was negligent in either or both of the respects set forth in the first instruction, yet if they further believed that decedent was negligent to such an extent upon the occasion in question that the accident would not have happened except for his said negligence, then their verdict should be for defendants.

Because of the omission in the first instruction to submit one of the controlling issues in the case it becomes necessary to reverse the judgment, and we have thought it advisable also to direct the giving of the ordinary contributory negligence instruction as indicated, in the place of instructions 4 and 5.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceeding consistent herewith.