## A. L. Dodd Trucking Service v. Ramey.

April 19, 1946.

Finley F. Gibson and G. D. Milliken for appellant.

Rodes, Harlin & Willock for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER
—Reversing.

We summarize the evidence in behalf of the plaintiff, now appellee, Fred Ramey, in his action against A. L. Dodd, doing business as the Dodd Trucking Service: He had gone to the depot and filling station of the defendant in Bowling Green one day in May, 1944, to talk with Dodd about the purchase of a partnership interest in the business. Dodd was interested in the proposition and suggested that Ramey ascertain his status with

respect to being drafted into the armed services and report back to him. It was upon his return that the accident happened.

A mechanic was engaged in taking tires off a truck in order to rotate or switch them about, and Dodd asked Ramey whether he thought the one which was then being removed was worth retreading. He stooped over to examine the tire and a steel ring flew off and struck him in the head, fracturing his skull. The truck had dual wheels on the rear. The outer wheel had been removed and the inside one was stuck or so tight that the workman, Skaggs, was hammering on the underneath side of the rim to knock it off the wheel. It was not intended to take the tire itself from the rim, but to remove it from the wheel with the tire in place. Unlike on the ordinary passenger car, on a truck of this kind the tire is held in place on the rim by a separate metal ring instead of by flanges on the rim itself. The lock-ring is held in place by the pressure of the inflated tire, and, as we understand, ordinarily comes off the wheel with the rim and tire as a unit. The pounding upon the other side of the rim loosened the ring so that it was thrown off with great force by the air pressure. There is evidence that the safe way under circumstances like this is to deflate the tire before attempting to remove it with the rim and the ring from the wheel and that it is dangerous not to do so, although both methods are quite generally used.

While Dodd was not clear concerning the reason of the plaintiff's presence, he substantially conceded that he was there for the purpose he stated. Dodd denied having asked Ramey's opinion respecting the retreading of the tire. The effect of his testimony and that of Skaggs is that the plaintiff was merely standing by and curiously stooping over to watch the work, Dodd at the time turning the wheel as Skaggs was striking it. The defendant testified to a recognition of danger to a person standing before a tire being so removed.

The plaintiff's evidence clearly established his presence and status as that of an invitee at the time of the accident, since he says that he was expressly asked to return after ascertaining his draft status, and that is substantially admitted by the defendant. He says also he was specifically asked to inspect the tire then being worked on. That is denied.

Sometimes the distinction is shadowy as between the status of one as an invitee or as a licensee, but the difference in duty owing the individual at the time may be material. Initially one may be a gratuitous licensee, as by implication and without actual knowledge of his presence by the person having dominion over the premises, or coming there solely for his own purpose. In such status he does not occupy a favorable position, as the duty owing him is only negative, i. e., not to harm him wantonly or by an intentional act endangering his safety. Kentucky & W. Va. Power Co. v. Stacy, 291 Ky. 325, 164 S. W. 2d 537; Brauner v. Lentz, 293 Ky. 406, 169 S. W. 2d 4. But his status may be transformed or converted into that of an invitee by actual knowledge of his presence and, as in this case (considering the defendant's testimony only), by his reception and engaging in a transaction of common interest or mutual advantage which may be consummated prospectively or presently. L. E. Meyers' Co. v. Logue's Adm'r, 212 Ky. 802, 280 S. W. 107; Shoffner v. Pilkerton, 292 Ky. 407, 166 S. W. 2d 870.

Therefore, whether we look at the situation as presented by the plaintiff or the defendant it was the defendant's duty to plaintiff to exercise ordinary care for his safety and not to expose him to an unreasonable risk or to allow conditions to exist within the scope and area of the invitation which would imperil his safety or to do any act which made his use of the premises dangerous without warning him. It was the defendant's duty to conduct his business with reasonable care to avoid personal injury to his invitee and to protect him from negligence of himself or his representatives. Black Mountain Corporation v. Webb, 228 Ky. 281, 14 S. W. 2d 1063; Peerless Mfg. Corp. v. Davenport, 281 Ky. 654, 136 S. W. 2d 779; Kentucky & W. Va. Power Co. v. Stacy, supra; 45 C. J. 825; 38 Am. Jur., Negligence, Secs. 96, 99, 100 and 101. On the other side, the plaintiff assumed all normal and ordinary risks attendant upon the use of the premises, such as work being done there, and risks which were obvious or should have been observed in the exercise of ordinary care, measured by the knowledge and experience of the invitee. Peerless Mfg. Corp. v. Davenport, supra; 45 C. J. 837; 38 Am. Jur., Negligence, Secs. 96, 97; 24 Am. Jur., Garages, Parking Stations and Liveries, Sec. 43. The accident occurred on

premises covered by the invitation and within the course of its purpose, for the business was being transacted at that point, which was on the open paving of the filling station.

In Loney v. Laramie Auto Co., 36 Wyo. 339, 255 P. 350, 53 A. L. R. 73, the plaintiff had accompanied the owner of an automobile to a garage to have a tire repaired and was left there by the owner for the purpose of paying the charges and taking the car out of the garage to an appointed place. He called the attention of the employee who had changed the tire that the ends of the lock rim were not together and that it was apparently out of place and insecurely fastened. He stooped down to get a closer view of what was wrong and while in that position the tire blew off, driving the lock rim against his face and destroying an eye. The trial court gave a peremptory instruction for the defendant upon the grounds that the plaintiff was a licensee, to whom the defendant owed no duty except not to wilfully inflict an injury upon him, and that he was contributorily negligent in that he had knowingly subjected himself to the risk and danger from which the accident occurred. The judgment was reversed, the Supreme Court holding that the plaintiff occupied the status of an invitee and accordingly had the right to be protected while standing around the car at that place from any dangerous condition created or committed by the operators of the garage. The examination of the tire was regarded as merely incidental to the getting of the car and as a usual thing to do in accordance with the ordinary practice; one that might well be anticipated by the defendant and which should not, at least in the absence of evidence showing a contrary practice, be held as a matter of law to be beyond the scope of the invitation and outside of the purpose thereof. In the matter of contributory negligence, the plaintiff was shown to be familiar with the changing of such tires and the proper methods of doing so, but it did not appear that the danger was open or obvious or that a person of ordinary prudence should necessarily have appreciated the danger, so that there was a question of fact for the jury as to whether or not the defendant should have anticipated the injury to plaintiff therefrom. Since that was true, it could not be said as a matter of law that the plaintiff should have appreciated the danger and resulting injury.

It seems to us the same reasoning and rule is applicable to the case at bar. Moreover, as stated, the plaintiff, according to his testimony, had been asked by the defendant to examine the tire being removed. The evidence does not warrant the conclusion of contributory negligence as a matter of law merely because the plaintiff was familiar with the method of removing the tire, for it is not shown that he had knowledge of any special danger in the practice of that method. We think the court was right in submitting the case to the jury. No complaint is made of the instruction predicating liability upon the belief that the plaintiff had gone upon the premises for the purpose of negotiating the purchase of an interest in the business, and that while he was so engaged the defendant owed him the duty of exercising ordinary care for his safety, the plaintiff having the duty of exercising the same degree of care for his own safety. The instruction also predicated the right of recovery upon the proposition that the danger, if any, was unknown to the plaintiff and could not have been discovered by him in the use of ordinary care, along with which ran a contributory negligence provision. But objection is made to the language of the instruction in referring to the operation as removing the ''tire,'' whereas the proof was that it was the ''rim'' being taken off. The unit had been referred to during the course of the evidence as ''the tire''—even as we have referred to it in this opinion—and we are quite certain that the jury clearly understood that reference.

The case of Hobson v. Turner, 299 Ky. 342, 185 S. W. 2d 550, is distinguishable. There an employee, engaged in removing a worn-out tire, was injured by it blowing out, the cause of which was not shown.

Nor do we agree with the appellant that he was entitled to a peremptory instruction because of failure of proof of the negligence pleaded. The allegations of the petition are in substance and effect that the defendant was negligent in the manner in which the ''wheels, tires and attachments'' had been installed or placed on the vehicle and in the manner in which the tire was being removed. There was no evidence whatever of any negligence in the installation or way in which the tire, rim and ring were put on the wheels. It is true that the allegations connect the two theories or acts of negligence. The argument goes that there was such coupling of the

acts charged as to require proof of both rather than of either. It seems to us the petition should be construed as charging two acts of negligence, or negligence in two respects, and the plaintiff proved one of them. It is familiar law that a party may allege separate and distinct acts or omissions and has the right to prove all of them, but he is not required to do so. It is sufficient to prove any one or more of them as being the negligence which caused his injury. Louisville & N. R. Co. v. Gaines, 152 Ky. 255, 153 S. W. 216; Consolidated Coach Corporation v. Hopkins, 228 Ky. 184, 14 S. W. 2d 768. The instruction was confined to the negligence alleged as to the removal of the tire in a dangerous manner.

We are of opinion that Instruction No. 3 as to the measure of damages was erroneous, as the appellant contends. The plaintiff had had his skull split open; was unconscious for a week or more; had suffered intense pain; lost his sense of smell and practically of hearing in one ear. At the time of the trial, one year later, he was still suffering with severe headaches. His doctor was not asked and did not state whether or not the injury was permanent. The instruction properly included the elements of expenses, loss of time, and physical and mental suffering. However, it also included authority to find damages for permanent injury ''if any to his head or his hearing, or his sense of smell.'' Herein lies the error.

The responsive argument of the appellee recognizes the absence of express testimony of a permanent injury, but insists that the verdict was not too great for the pain and suffering, and that the absence of an opinion as to permanency should be deemed non-prejudicial. We pass by that point as well as the argument that the facts themselves reveal permanency, such, for example, as would be the case where there was proof of the amputation of an arm or leg, or some major injury that was open to observation.

It is clear that the instruction is erroneous in failing to state the criterion of recovery for a permanent injury, namely, the reduction in the plaintiff's power to earn money or the impairment of earning capacity, and in specifying that damages could be awarded for injuries to the plaintiff's head, hearing and sense of smell. The next instruction, No. 3a, advised the jury that

the allowance, "if any, for any permanent injuries, if any, or the permanent impairment of plaintiff's power to earn money, if any, under Instruction No. 3, should not begin until the end of the period allowed for lost time, if any." We do not think this cured the defect. We have held it fatal error to make similar specifications or segregation of particular elements or items in connection with the general measures of damages for pain and suffering and the impairment of earning power. South Covington & C. St. Ry. Co. v. Nelson, 89 S. W. 200, 28 Ky. Law Rep. 287. As said in Lexington R. Co. v. Herring, 96, S. W. 558, 29 Ky. Law Rep. 794, Id., 97 S. W. 1127, 30 Ky. Law Rep. 269, holding that it was error to authorize an allowance of compensation for the loss of a foot:

"Different people might have very different ideas as to the amount of money that would compensate a woman for the loss of a foot. Such an instruction would be in effect to give the jury no criterion of damages, and is equivalent to an instruction to them to find for the plaintiff such a sum as they deemed right, considering the injury she had received."

Like conclusions were reached in Vanmeter v. Crews, 149 Ky. 335, 148 S. W. 40, where the instruction was to award compensation for plaintiff's loss of health; in South Covington & Cincinnati Street R. Co. v. Core, Ky., 96 S. W. 562, for nervous shock and disability to plaintiff's arm, in addition to physical pain and mental anguish; in Interstate Coal Co. v. Love, 153 Ky. 323, 155 S. W. 746, for permanent injury to plaintiff's heel; in Colonial Coal & Coke Co. v. Hobson, 208 Ky. 612, 271 S. W. 680, for disfigurement of plaintiff's face; and in W. A. Wickliffe Coal Co. v. Ryan, 241 Ky. 537, 44 S. W. 2d 525, for permanent injury to plaintiff's eyes and impairment of his ability to earn money, since it allowed double damages. Other cases of like effect are Paducah Traction Co. v. Burradell, 104 S. W. 709, 31 Ky. Law Rep. 1052; Lexington & Eastern R. Co. v. Crawford, 155 Ky. 723, 160 S. W. 267; and Consolidated Coach Corporation v. Wright, 231 Ky. 713, 22 S. W. 2d 108.

For this reason the judgment is reversed.