## COMMERCIAL STANDARD INS. CO. v. AMERICAN EMPLOYERS INS. CO.

Civ. A. No. 1730.

United States District Court
W. D. Kentucky, at Louisville.

Sept. 29, 1952.

Finley F. Gibson, Jr., Louisville, Ky., for plaintiff.

Curtis & Curtis, Louisville, Ky., J. W. Clements, Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This action was filed by the Commercial Standard Insurance Company August 9, 1949, against the American Employers Insurance Company to recover $8,412.36, with interest and costs alleged to be due it because of expenses incurred by the plaintiff in defending an action against A. L. Dodd, doing business as Dodd Trucking Company at Bowling Green, Kentucky, and paying a judgment which was the result of the action defended by plaintiff, on the grounds that the defendant was primarily liable for the total expenditures of plaintiff in de-

fending the action and paying the judgment, under the terms of a policy or policies of indemnity insurance which made the defendant primarily liable.

Defendant denied that it was primarily or at all liable for the amount sued for, or any part thereof.

The case was tried to the Court without a jury.

When the case was tried, plaintiff was contending that the defendant, American Employers Company had issued one policy of Insurance, but in the course of the trial it was disclosed that the latter had issued two policies insuring the premises owned by A. L. Dodd, where his service station was operated and plaintiff filed an amended complaint, to which defendant filed answer.

Subsequently, defendant filed a substituted answer to plaintiff's complaint as then amended.

Illness of plaintiff's Counsel and the Judge who tried the case has greatly retarded the progress of this case. However, on September 23, 1952, Counsel for plaintiff and defendant stipulated and agreed that the action be now submitted on the complaint as amended and upon defendant's substituted answer and that the third policy or the policy not mentioned in the pleadings or otherwise until the trial be considered as filed as evidence by photostatic copy of that policy.

Plaintiff's contentions are:

1. That the liability of the defendant American Employers Insurance Company on account of the two policies issued by it to A. L. Dodd, d/b/a Dodd Trucking Service constituted primary insurance and that the plaintiff under its policy had a secondary liability only for any excess of liability over and above the indemnity limits of the defendant's policies.

2. That if it be mistaken in this contention, then that it recover from the American Employers Insurance Company the pro rate proportion of the total liability which the indemnity limits of its two policies would bear to the total amount of indemnity included in the three policies.

Defendant refuted the first contention and as a second contention, interposes the defense that the terms of the plaintiff's policy limited its liability, in the event there should be other insurance against the loss covered by its policy, to a sum no greater than the proportion of the indemnity limit in that policy, to the total limit of liability of all valid and collectible indemnity against such loss, and that such liability under the three policies was several and not joint.

The Court makes the following—

Findings of Fact

1. The plaintiff, Commercial Standard Insurance Company, is a corporation created and organized under the laws of the State of Texas.

Defendant, American Employers Insurance Company, is a corporation created under the laws of the State of Massachusetts, authorized and qualified to conduct business and issue policies of indemnity insurance in the Commonwealth of Kentucky.

2. On or about the fourth day of September 1943, the plaintiff Commercial Standard Insurance Company issued to A. L. Dodd, doing business as Dodd Trucking Service at Bowling Green, Kentucky, its policy of insurance number MC–166513, for a term of one year from the date of issuance.

3. On or about September 4, 1943, the defendant American Employers Insurance Company, issued to R. A. Hardy, its policy of indemnity insurance number X–1230007 and this policy was by assignment on March 9, 1944, assigned to A. L. Dodd, doing business as Dodd Trucking Service. The term of this policy was one year from date thereof.

4. September 4, 1943, defendant American Employers Insurance Company, issued to R. A. Hardy, Bowling Green, Kentucky, its policy of insurance number O–99241, providing insurance as defined by the policy for a period of one year from the date of its issuance.

On March 9, 1944, this policy was transferred and assigned by the company to A. L. Dodd, d/b/a Dodd Trucking Service.

5. On May 8, 1944, the three policies of insurance—all issued September 4, 1943—plaintiff's policy number MC–166513 and

defendant's two policies X–1230007 and O–99241 were in force. Policy MC–166513 provided indemnity to the insured on account of bodily injury liability as follows—

"1. Coverage A.—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the *ownership, maintenance or use* of the automobile, including the loading and unloading thereof. (Emphasis added.)

"(a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company."

Policy MC–166513 also contained the following language—

"8. Other Insurance.

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limits of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under Insuring Agreement IV shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to the automobile or otherwise, against a loss covered under said insuring agreement."

Defendant's policy X–1230007 contains the following language—

"1. Coverage A.—Bodily Injury Liability.

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined.

"11. Defense, Settlement, Supplementary Payments. It is further agreed that as respects insurance afforded by this policy the Company shall

"(a) defend in his name and behalf any suit against the insured alleging such injury, or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company.

"10. Other Insurance. If the insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

Defendant's policy O–99241 contains the following language—

"1. Coverage A. Bodily Injury Liability.

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of such of the opera-

tions hereinafter defined as are indicated by specific premium charge or charges in Item 3 of the declarations.

"Division 1. Automobile Dealer or Repair Shop.

"The ownership, maintenance or use of the premises herein designated, including the public ways immediately adjoining, for the purpose of an automobile dealer or repair shop, and all operations either on the premises or elsewhere which are necessary and incidental thereto, including repairs of automobiles or their parts, and ordinary repairs of buildings on the premises and the mechanical equipment thereof; and the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations, and also for pleasure use.

"11. Defense, Settlement, Supplementary Payments.

"As respects such insurance as is afforded by the other terms of this policy the Company shall

"(a) Defend in his name and behalf any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigations, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;

"12. Other Insurance. If the Insured has other insurance against a loss covered by this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

The limit of liability under each of the three policies on account of bodily injury liability was $10,000 for each person. The insurer in each of the three policies covenanted to defend actions against the insured, even if such suit was groundless, false, or fraudulent. Likewise, under each policy, the liability of the insurer was limited to the proportion of such loss which the limit of liability in that policy bore to the total limit of liability of all the valid and collectible insurance against such loss.

6. On the 8th day of May 1944, Fred Ramey went to the Filling Station at 1003 Center Street in Bowling Green, Kentucky, being operated by Dodd to consult with Dodd about the purchase of a partnership interest in that business.

In their negotiations, Dodd had requested Ramey to ascertain his status in the draft for military service and report to Dodd about this and Ramey had entered the premises at the Filling Station for the purpose of continuing the negotiations, after having consulted the Draft Board.

He was severely injured.

The facts relative to his injury are fully set forth in the opinion of the Court of Appeals of Kentucky in the case of A. L. Dodd Trucking Service v. Ramey, 302 Ky. 116, 118, 194 S.W.2d 84. Substantially, they are that; when Ramey came upon the premises at the Filling Station, a mechanic was engaged in taking tires off a truck, described in plaintiff's policy MC–166513, for the purpose of rotating them to provide for a uniform wear of the treads of the tires. Dodd asked Ramey whether he thought one of the tires then being removed was worth retreading. When Ramey stooped over to examine the tire, a steel ring flew off the truck wheel and struck him in the head, fracturing his skull. The outer wheel of dual wheels on the rear of the truck had been removed and the tire and rim of the inside wheel was stuck. The workman was hammering on the underneath side of the rim to knock off the rim and tire. This pounding on the inside of the rim loosened a lock-ring, causing it to be thrown off by the force of the air pressure in the tire.

7. Following the accident, Ramey sued Dodd in the Warren Circuit Court at Bowling Green, Kentucky, for damages on account of the injuries sustained and expenses incurred and obtained a judgment on the first trial in the sum of $5,758, which was reversed on appeal by the Court of Appeals of Kentucky, on account of improper instructions on the measure of damages.

180

Dodd v. Ramey, 302 Ky. 116, 194 S.W.2d 84.

Upon a second trial, plaintiff obtained a judgment for $5,000.00, which was affirmed by the Court of Appeals. Dodd v. Ramey, 307 Ky. 444, 211 S.W.2d 395.

When Ramey's suit was filed, service of the summons was had upon A. L. Dodd, who promptly reported the action to L. Rhea Taylor, an insurance agent at Bowling Green, Kentucky, who represented both plaintiff and defendant and who as agent had caused to be issued to Dodd all three of the policies above referred to.

Agent Taylor made a report on each company's form, provided for such reports, of the accident immediately after it occurred. Shortly after making that report, Taylor testified that he discussed the accident with F. R. Best, Louisville, Kentucky, in charge of claims against the American Employers Insurance Company, at that time. It was the opinion of Taylor and Best that the defendant, American Employers Insurance Company, had no liability on account of its policies and it was agreed that that company would not defend any action. When the suit was filed and the summons delivered by Dodd to Agent Taylor, he forwarded the summons to the plaintiff, Commercial Standard Insurance Company, and that company defended the action.

F. R. Best had been succeeded as representative of the defendant Insurance Company in charge of claims in Kentucky, by James B. Rice, with whom Agent Taylor discussed the filing of the suit. Mr. Rice declined to permit his company to assume any responsibility for defending the action.

8. In the course of defending the suit, plaintiff Commercial Standard Insurance Company expended $2,928.20, in Attorney's fees and expenses and paid to the plaintiff Fred Ramey and his Attorneys in that action in settlement of the judgment and interest, $5,484.16.

## Conclusions of Law

I. This Court has jurisdiction of the subject matter herein and of the parties, because of the diversity of citizenship. Title 28, Section 1332(a)(1), U.S.Code.

II. On May 8, 1944, Fred Ramey sustained injuries on the premises known as 1003 Center Street, Bowling Green, Kentucky, where A. L. Dodd, doing business as Dodd Trucking Service, was conducting a trucking depot and service and filling station, by reason of the negligence of the defendant Dodd and his employees in the maintenance, use and operation of a truck described in the policy of indemnity insurance issued by the plaintiff Commercial Standard Insurance Company MC–166513.

The said Ramey received injuries due to the failure of Dodd to exercise ordinary care for Ramey's safety and not to expose him (Ramey) to any unreasonable risk or to allow conditions to exist in the premises at 1003 Center Street and its environs which would imperil Ramey's safety. Dodd Trucking Service v. Ramey, 302 Ky. 116, 194 S.W.2d 84 and 307 Ky. 444, 211 S. W.2d 395.

By reason of the final judgment in the action in the Warren Circuit Court, Fred Ramey v. A. L. Dodd Trucking Service, the defendant there, A. L. Dodd, became legally liable in the sum of $5,000, with interest and costs. The legal liability imposed by law as the result of said litigation was insured against by the indemnity provided in plaintiff's policy number MC–166513, and by each of the two policies issued by defendant American Employers Insurance Company, numbers X–1230007 and O–99241.

The total amount of indemnity provided in each policy on account of personal injury to one person was $10,000 and the total amount of indemnity on account of personal injury to one person in all three policies was $30,000.

Because of the provision in each policy with respect to the extent of liability in the event of "other insurance", the liability of the plaintiff under its policy and of the defendant under each of its policies was that proportion of such loss which the limit of liability in the particular policy bore to the total limit of liability of all three policies, so that the limit of liability of the plaintiff under its policy was 10/30's of the total liability and the defendant was liable

on account of each of its policies in a maximum sum equal to 10/30's of the liability.

III. First to be determined is whether or not there is merit in plaintiff's contention that the coverage of indemnity in the defendant's policies constituted primary coverage and the coverage of plaintiff's policy was only secondary and applicable only to any excess liability over and above the limit of defendant's policies.

Similar provisions were considered by this Court in 1937, by the late Judge Elwood Hamilton. In the case of New Amsterdam Casualty Company v. Hartford Accident & Insurance Company, D.C., 18 F.Supp. 707. It was held by Judge Hamilton that one of two or more automobile insurance policies covering the same loss, containing a pro rata clause limiting the liability of the insurer to a proportionate amount of the loss, creates a liability which is limited and the liability of the co-insurers to the insured is several and not joint and that neither insurer has any interest in the liability of the other except a mathematical one, the proportionate liability of one determining that of the other.

Such is the conclusion of the Maryland Court of Appeals in Celina Mutual Casualty Company of Ohio v. Citizens Casualty Company of New York, Md., 71 A.2d 20, 21 A.L.R.2d 605.

See also Ranalio v. Hinman Company, D.C.Ohio, 49 F.Supp. 920, affirmed on order—Buckeye Union Casualty Co. v. Ranallo, 6 Cir., 135 F.2d 921.

Judge Freed held, in the Ranallo v. Hinman Bros. Company case, on facts similar to those in the case at bar, that the liability of the insurers under the two policies was that of co-insurers and the liability in neither policy primary nor secondary to the other.

The Court concludes that the plaintiff is not entitled to recover from the defendant the amount of the judgment, interest and costs incurred in defending the case in the Warren Circuit Court and the Court of Appeals of Kentucky, on the ground that defendant's policies of insurance or either of them, constituted primary insurance and that the plaintiff's liability was secondary thereto.

IV. The second proposition, i. e., that the plaintiff is entitled to recover from defendant two-thirds of the total amount expended by the plaintiff in payment of the judgment and amounts expended in the action against Dodd, presents more difficulty.

The legal question should be determined under the doctrine of Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, by the law of Kentucky. However, neither Counsel for plaintiff nor defendant has been able to furnish the Court any applicable authority from the Court of Appeals of Kentucky. Diligent search by the Court has not disclosed such authority.

In the case of United States Guarantee Company v. Liberty Mutual Insurance Campany, 244 Wis. 317, 12 N.W.2d 59, 61, 150 A.L.R. 632, plaintiff and defendant had issued policies obligating each to defend the Assured in actions against it and the provision relative to other insurance in each policy provided that the Assured should not recover from the company a larger proportion of the entire loss and expenses than the amount that the policy bore to the total of valid and collectible insurance. Plaintiff, United States Guarantee Company, defended the action against insured, effected a settlement during the trial and paid the agreed amount of the settlement.

Defendant, Liberty Mutual Insurance Company, had been notified of the pendency of the action and had refused to defend, just as defendant in the case at bar was notified and refused to defend the action against the insured.

The Court permitted the recovery, holding that the refusal of the defendant to defend the action constituted such a breach of its contract that it could not rely upon the provisions of the policy prohibiting an action against it unless its liability had theretofore been determined by a final judgment after trial of the issues in an action or determined by agreement of the parties, with the consent of the Insurance Company.

The Court allowed a recovery by the United States Guarantee against Liberty for the proportion of total insurance represented by the total of Liberty's liability. The Court said—

"In paying the damages to Gaurkee it (U. S. Guarantee Company) performed the terms of its contract with the assured, as the defendant had breached and violated its contract for a like liability. By the terms of its policy plaintiff was subrogated to the rights of the assured which, under the decisions, is a substitution of one person in the place of another with reference to a lawful claim or right. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by one who in good conscience ought to pay it."

In the case of United States v. United States Fidelity & Guaranty Company, 247 F. 16, 20, the Court of Appeals for the Sixth Circuit said—

"It is the general rule, applicable to insurance and indemnity contracts of all kinds, that the insurer, on paying to the assured the amount of the loss on the property insured, is subrogated in a corresponding amount to the assured's right of action against any other person responsible for the loss."

In the annotation to the case of Celina Mutual Casualty Company v. Citizens Casualty Company, supra, and on page 612 and 613 of the annotation in 21 A.L.R.2d, there is a discussion on the right of a co-insurer to contribution after payment of the common liability.

The question, as stated in this annotation, is whether or not an insurer, which despite the pro rata clause in the automobile liability policy pays the full amount of the claim, or a larger proportion thereof than bound to under the pro rata clause, has a right of contribution against the other insurer whose policy also contains a pro rata clause. "Despite the lack of direct authority", says the annotation—

"it appears to be well settled that where one of the insurers, despite the existence of the pro rata clause, pays a larger proportion of the amount than it is legally bound to do, no right of contribution exists against the other insurers, this on the ground that such excess payment is viewed as a purely voluntary payment."

The case of Farm Bureau Mut. Auto Insurance Company v. Buckeye Union Casualty Company, 147 Ohio St. 79, 67 N.E. 2d 906, 910, is to the same effect. In that case, the automobile of insured, Harry Linden, was covered by two policies of liability insurance. One policy was issued by the Farm Bureau Mutual Automobile Insurance Company with limits of $10,000 and $20,000. The other policy was issued by the Buckeye Union Casualty Company, with limits of $5,000 and $10,000. Each of the two policies contained a provision limiting the liability of the issuing company, in the event insured had other insurance, to a sum no greater than the proportion of its policy limit to the total liability of all the valid and collectible insurance.

Farm Mutual Company negotiated a settlement with the claimants against the insured, after being requested by one Haverich, Adjuster for Buckeye Union, to secure releases for the latter company and that Buckeye would pay fifty cents for every one dollar paid by Farm Bureau. After the settlement had been consummated and Farm Mutual had paid the claimants $4,500 and taken full releases for their claims, Buckeye Casualty refused to pay anything on the settlement.

Farm Mutual sued Buckeye Casualty to recover $1,500 on the equitable ground that it was entitled to contribution in this amount. The Court concluded that Farm Mutual and Buckeye were coinsurers and that each became liable for no more of the total loss than the proportion which its indemnity insurance bore to the total amount of insurance; that Farm Mutual was a volunteer upon the payment of any amount in excess of its proportion and could not resort to equity for recovery based upon subrogation or contribution, because equity would not aid a volunteer.

The Court there quoted with approval the following from 29 Amer.Jur., page 998, Section 1333:

"If several insurers bind themselves to pay the entire loss in case of the de-

struction of the subject of the insurance, and one insurer pays the whole loss, the one so paying has a right of action against his co-insurers for a ratable proportion of the amount paid by him, because he has paid a debt which is equally and concurrently due by the other insurers. But if each of several insurers contracts to pay such proportion of the loss to result from the destruction of the insured premises as the amount insured by such insurer bears to the whole insurance effected on the property, none of them has any right to contribution from the other, nor will the payment of the whole loss by any of them discharge the liability of the others, for in such a case the contracts are independent of each other; nor will the payment by one insurer of more than his share of a loss, and his assignment of his right to contribution, create any cause of action in favor of his assignee."

It is concluded in the case that the liability is several but not joint, and is determinable as soon as the liability to insured's claimants became fixed, and when plaintiff paid more than that portion of the total liability which the limit of its policy bore to the total insurance, it was a volunteer and cannot seek the aid of equity to recover any excess of the amount so paid from its coinsurer.

Judgment may be presented by counsel for defendant, dismissing plaintiff's action, and awarding to defendant its costs.