**The HANOVER INSURANCE COMPANY**

**v.**

**The TRAVELERS INDEMNITY COMPANY.**

**Civ. No. 9947.**

United States District Court
D. Connecticut.
March 8, 1965.

Samuel Engelman, John J. Hunt, Bridgeport, Conn., for plaintiff.

Adrian W. Maher, Bridgeport, Conn., for defendant.

ZAMPANO, District Judge.

In this diversity action tried to the Court without a jury, plaintiff, The Hanover Insurance Company, seeks indemnification of $15,000 against the defendant, The Travelers Indemnity Company, as a result of a settlement payment to one Muriel Davis in a state court negligence action.

## FINDINGS OF FACT

1. The plaintiff, The Hanover Insurance Company, is a corporation organized under the laws of the State of New York.

On June 30, 1961, The Hanover Insurance Company became the successor by merger to Massachusetts Bonding and Insurance Company, hereinafter referred to as plaintiff.

2. Defendant, The Travelers Indemnity Company, is a corporation organized under the laws of the State of Connecticut.

3. On and before November 30, 1956, the plaintiff and the defendant were engaged in the business of insuring persons and corporations against liability imposed upon them by law because of bodily injuries sustained by any person, caused by accident and arising out of the use of automobiles.

4. On November 30, 1956, New England Motors, Inc. was a corporation conducting an automobile sales agency in Westport, Connecticut.

5. On said date John C. Stothart and John C. Stothart, Jr. were co-partners under the firm name of Stothart Motors and were engaged in a similar business in Greenwich, Connecticut.

6. The plaintiff insured New England Motors, Inc., and the defendant insured Stothart Motors under similar garage policies, each of which had a provision extending liability coverage to persons driving with permission of the insured.

7. On November 30, 1956, New England Motors, Inc. had for sale a certain new 1957 Buick convertible which it agreed to lend to Stothart Motors for purposes of demonstration to a prospective customer.

8. John C. Stothart, Jr. came to the premises of New England Motors with a set of dealer registration plates issued by the Motor Vehicle Department of the State of Connecticut to Stothart Motors.

9. Thereupon A. Bryan Johnson, manager of New England Motors, Inc., ordered one Donald DeSola, a "car boy" employed by New England Motors, Inc., to take Stothart's marker plates and "put them on the 1957 convertible Buick and put five gallons of gas in the tank."

10. DeSola put the marker plates on the Buick and drove it out onto the public highway to a gas pump owned by New England Motors, Inc.

11. As DeSola was backing up the Buick to the gas pump, the vehicle struck and seriously injured one Muriel Davis due to the negligence of DeSola.

12. On or about August 29, 1957, the Davis woman instituted suit in the Superior Court for Fairfield County, State of Connecticut, against DeSola, New England Motors, Inc. and Stothart Motors, alleging that DeSola was the agent of either or both of the co-defendants.

13. The plaintiff provided an attorney to appear for and to defend DeSola and New England Motors, Inc. in this action.

14. The defendant provided an attorney to appear for and to defend Stothart Motors only.

15. Approximately a year later the Superintendent of Claims of the plaintiff made demand upon the defendant to defend DeSola in this action and to satisfy any liability to Muriel Davis arising out of the accident.

16. The defendant refused to defend DeSola, claiming he was not an insured person under the policy it issued to Stothart Motors.

17. On December 30, 1959, the Superintendent of Claims of the plaintiff again wrote the defendant expressing fear of a jury's "tremendous verdict" and requesting contribution because "it is our opinion that in all probability both automobile agencies will be held as joint tort feasors in this case."

18. In reply, the defendant refused to make any contribution toward settlement.

19. On February 21, 1961, the plaintiff again wrote the defendant, expressing disappointment that the defendant refused to pay 50% of a settlement and stating, "[we] will be anxious to hear any further thoughts you may have which could lead to an amicable disposition of this entire matter for all parties concerned."

20. After the state court case appeared on the assignment list for trial for the first time, counsel for plaintiff obtained permission of the court to withdraw his appearance for DeSola on the ground that DeSola had left his employment and had gone to parts unknown. Default judgment was entered against DeSola.

21. At the trial the Davis woman offered to settle for $30,000. The plaintiff agreed to pay $15,000 but the defendant refused to pay the other $15,000.

22. The trial commenced on January 16, 1963 and during the third day of trial, after several conferences with the court, the case was settled for $20,000, of which the plaintiff agreed to pay $15,000 and the defendant agreed to pay $5,000.

23. At no time during these settlement negotiations and the eventual agreement to share the cost of settlement did counsel for plaintiff ever manifest an intention, or even an interest, in seeking a recovery over against the defendant.

24. Counsel for the plaintiff and counsel for the defendant assumed that the settlement ended the case and it was then closed.

25. The general release executed by Davis for the plaintiff included DeSola as well as New England Motors, Inc. and the general release from Davis to the defendant concerned only Stothart.

26. The plaintiff paid the $15,000 because it appeared extremely probable that New England Motors, Inc. would be held liable for the injuries to the Davis woman caused by the negligence of its agent and servant, DeSola, and that this liability might greatly exceed $20,000.

27. The defendant paid $5,000 toward settlement to avoid "further trial and appellate costs and to avoid further litigation."

28. Some seven months later on August 8, 1963, the plaintiff instituted the present action for indemnity on the ground that the payment of the claim of Muriel Davis "was equitably the obligation of the defendant herein as exclusive insurer of DeSola and not in fact the obligation of said Massachusetts Bonding and Insurance Company or of

the plaintiff because said DeSola was solely an insured of the defendant."

29. The defendant denies the allegations of the plaintiff's complaint, affirmatively alleges waiver and estoppel, and seeks affirmative relief by way of a counterclaim.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and of the parties. Title 28, United States Code, Section 1332 (a);

2. The plaintiff waived and relinquished any rights, if any, to indemnity or contribution from the defendants and is estopped from a recovery in this action;

3. Judgment is entered for the defendant on the plaintiff's complaint, with costs as shall be determined by the Clerk of this Court;

4. Defendant failed to sustain its burden of proof on the counterclaim and, therefore, judgment shall enter for the plaintiff on the counterclaim.

## DISCUSSION

■ Under the facts and circumstances of this case, there is no question that the plaintiff undertook to settle the Davis case because the jury would almost certainly find that DeSola, as the agent and employee of New England Motors, Inc., caused the injuries to the Davis woman by his negligent operation of the Buick automobile. The defendant in good faith reliance on seemingly sound advice of counsel refused to defend DeSola, as a non-insured under its policy, but did enter the litigation on behalf of a co-defendant, Stothart Motors. Under the pleadings in the state court action issues of agency were specifically framed to resolve the present dispute between the parties. This Court rejects plaintiff's assertion "It seems self-evident that the climate at the Davis trial was not favorable to a dispassionate settlement of the difficult and subtle question of whether defendant's policy covered DeSola" and that "the plaintiff was under considerable coercive force by exposure to the Davis claim." Rather, the situation seems clearly to have been that counsel for the respective parties impliedly agreed to the proportionate payment of the settlement in direct relation to the probable risk each faced of being held liable. Neither attorney, in entering their agreement to pay the $20,-000, intended or anticipated they were thereby buying further litigation. The payments to Muriel Davis were purely voluntary and plaintiff, as a volunteer, cannot now seek the aid of equity to recover from the defendant. Commercial Standard Ins. Co. v. American Emp. Ins. Co., 108 F.Supp. 176 (W.D.Ky. 1952).

It is true plaintiff early in the proceedings placed the defendant on notice that DeSola's negligence was the sole responsibility of the defendant. However, its subsequent letters and conduct reveal a change in position until, at trial, it appeared satisfied to have defendant contribute 25% of the settlement. The Court finds that the plaintiff intentionally and voluntarily relinquished any rights of indemnity it may have had against the defendant. Grippo v. Davis, 92 Conn. 693, 104 A. 165 (1918); 21 A.L.R.2d 611, 613.

■ Moreover the conduct of counsel for the plaintiff during and at the time of settlement estops the plaintiff from claiming a recovery over. Faced with the formidable facts supporting estoppel in this case, plaintiff seeks to avoid their consequences by contending its counsel had authority merely to settle the claims of the Davis woman but lacked the authority to settle the dispute between the co-defendants. Any such claim of an undisclosed limitation of authority is without merit. All parties to an action, their counsel and the court are entitled to assume defense counsel possess full authority to settle all issues in any given lawsuit, unless there is an express disclosure of limited authority. If it were to be otherwise, in every case involving an insurer nothing less than a pro se appearance by the insurer as well as an appearance by their counsel would suffice.