Ralph LOBRED, Appellant,

v.

Obie MANN, Appellee.

Court of Appeals of Kentucky.

Nov. 5, 1965.

J. Walter Clements, Louisville, for appellant.

Robert P. Hastings, O. Grant Bruton, Louisville, for appellee.

DAVIS, Commissioner.

Obie Mann, appellee, obtained a jury verdict for $16,473 against appellant Ralph Lobred, based on appellee's asserted personal injuries sustained when he was struck by an automobile driven by appellant. To reverse the judgment entered upon that verdict, the appellant makes four assignments of error: (1) appellee was guilty of contributory negligence as a matter of law; (2) the evidence did not warrant an instruction on permanent injury; (3) an erroneous instruction was given, and (4) the damages are so excessive as to reflect that the jury " * * * was either misled by these enigmatic instructions, or motivated by reasons other than those inferable from the evidence."

The subject accident occurred in Louisville on April 27, 1961, on Seventh Street near its intersection with Cedar Street. The time of the accident was shortly after 9:00 a. m.; the weather was clear and dry. Appellee, an employee of Louisville Gas & Electric Company (hereinafter L G & E), was a cable splicer, and on the occasion of the accident was engaged in his duties as such. With him on the project were two fellow employees.

Seventh Street was a one-way street for south-bound traffic at the time of the accident. There were two driving lanes and two parking lanes on Seventh Street. In the performance of his duties appellee was required to open and enter a manhole, located between the two westernmost lanes of Seventh Street; the white line which divided the two westernmost lanes intersected the site of the manhole. Prior to the accident a three panel guard device was placed just north of the manhole; this guard was constructed of tubular material from which were suspended three flags. The center section of the guard device was set at a substantially right angle to Seventh Street; the other two panels lay at approximate forty-five degree angles to the center panel, so as to partially enclose the area around the manhole. The open or mouth area of this guard was facing southwardly. A two-wheeled trailer cart of L G & E was positioned just south and slightly west of the manhole.

According to appellee's theory and evidence, before the accident the appellee had been down into the manhole, which was a comparatively shallow hole less than five feet in depth. He had withdrawn some cable from the hole and had returned to the street surface from the hole before he was hit. Appellee said that he was leaning over, within the guard rail, when one of his fellow employees shouted a warning "Watch out." Nearly simultaneously with that warning appellant's automobile, traveling south on Seventh Street at about 10 miles per hour, struck the guard rail. The appellee was thrown forward against the two-wheel cart and allegedly injured.

The appellant testified that his vehicle did not strike the guard rail or appellee at all. However, there was evidence from a police officer that the right front of appellant's car was slightly damaged, and yellow paint as if from the guard rail was

observed on the car at the damaged point. There was no obstruction to appellant's view of the guard rail as he approached it.

 The appellant vigorously contends that the appellee was guilty of contributory negligence as a matter of law, and that the trial court should have directed a verdict absolving appellant of liability. This contention is rested on the fact that appellee admitted that when he came out of the hole onto the street he did not look toward the north. Since appellee knew that the normal flow of traffic would be coming from the north, and also knew that it was dangerous to work in a busy city street, it is reasoned that appellee convicts himself of contributory negligence. This argument overlooks the fact that appellee, and witnesses in his behalf, testified that appellee had already safely emerged from the hole, and was actually leaning over working on the cable before the accident. Assuming, without deciding that it constituted negligence for appellee to come up from the hole without looking to the north, we think it is patent that negligence in that regard had ceased after appellee safely gained his place on the street's surface. The time interval, according to appellee's evidence, between his returning to the street surface and the impact was of sufficient duration to permit a finding that no useful purpose would have been served by looking toward the north before coming out of the manhole. Lanzner v. Wentworth, Ky., 315 S.W.2d 622, cited by appellant, is not controlling here; basic factual differences between Lanzner and the case at bar readily distinguish the cases. Moreover, the Lanzner opinion deals with the matter of liability of an individual occupying an entirely different role from the one played by appellant in this accident. Appellant relies also on Clark v. Smitson, Ky., 346 S.W.2d 780; Allen v. Dillman, Ky., 249 S.W.2d 23; Jordan v. Clough, Ky., 313 S.W.2d 581, and Carlisle v. Reeves, Ky., 294 S.W.2d 74. We shall not undertake a detailed analysis and distinction of each of the cited cases, but do observe that we have carefully considered them and find them to be distinguishable on their facts from the instant case. The prime distinction rests in the fact that here the appellee was required to be in the dangerous position in order to perform his lawful duties. As early as Berry v. Irwin, 220 Ky. 708, 295 S.W. 1020, this court recognized that one whose duties required him to work in a street could not perform his work and keep a constant lookout for vehicles. Compare Robinson v. Meding, 2 Storey 578, 52 Del. 578, 163 A.2d 272, 82 A.L.R.2d 1176, and R. E. Gaddie, Inc. v. Evans, Ky., 394 S.W.2d 118 (Decided June 11, 1965). We hold that the appellee was not as a matter of law guilty of contributory negligence, even though he realized he was working in a dangerous area. To hold otherwise would create "open season" on every person whose legitimate duties require his being in a perilous place.

 We think the evidence did warrant an instruction on permanent injury. The following excerpt from the testimony of an admittedly qualified doctor demonstrates the propriety of the permanent injury instruction:

(Dr. Twynam's evidence, in part):

"Q. 37. Now, doctor, is there, can you state whether or not this condition that you indicate Mr. Mann has, whether or not it is a permanent condition?

"A. It has been going on now for about thirty months and there hasn't been much change in it in the past year, as I recall, and from those facts I believe that I would consider it permanent."

\* \* \* \* \* \*

A to Q38. " \* \* \* I felt that he should have fifteen percent permanent partial disability."

The appellant contends that there was an insufficient showing of impairment of appellee's earning capacity, and relies on Herndon v. Waldon, 243 Ky. 312, 47 S.W.2d 1047, and other cited cases of like import.

Appellee testified, and was corroborated by medical and lay witnesses, that he had not been able to resume his normal duties as a cable splicer since the accident. He told of continuing disability to utilize his extremities in order to perform the somewhat strenuous tasks of a cable splicer. However, he has continued to work for L G & E in "light" work, requiring little or no physical exertion. His educational background is quite limited; his physical fitness for strenuous labor appears to be a fundamental requirement if he is to perform at his peak *carning capacity*. Consolidated Coach Corp. v. Wright, 231 Ky. 713, 22 S.W.2d 108; 22 Am.Jur.2d, Damages, §§ 92–94, pp. 134–139. The jury was entitled to evaluate the conflicting medical testimony. It is our view that the evidence was sufficiently positive and satisfactory to import reasonable certainty of permanent injury. A conclusive showing is not required. Ingram v. Galliher, Ky., 309 S.W.2d 763.

 The third asserted error relates to "double" damages because the jury was not instructed that any award for permanent impairment of earning power should be computed from the time following the period for which "lost time" damages were allowed. The complaint would be meritorious had not an appropriate remittitur been made. A. L. Dodd Trucking Service v. Ramey, 302 Ky. 116, 194 S.W.2d 84. The criticized instruction authorized the jury to find $470 for loss of time. The appellee made timely offer of remittitur of $470, and the trial court entered judgment for $16,003—the amount of the verdict less the remittitur of $470. This cured the error, since appellant cannot claim he has been required to respond in double damages. CR 61.01.

The final assault on the judgment is premised on the asserted excessive damages. There is substantial medical testimony that appellee had some pre-existing compressive fractures of the spine. However, the medical testimony positively shows that the injury sustained in the accident did *not* aggravate these pre-existing conditions. Yet appellee showed that he had worked regularly at strenuous labor prior to the accident, but that he has not been able to do strenuous work at any time since. There was medical evidence, as above noted, indicating that appellee will permanently endure partial disability as the result of this accident. There was medical evidence to the contrary. The jury elected to believe the evidence adduced for appellee—that evidence was of sufficient substantive value to support the verdict. Appellee was 45 years of age when the case was tried; his then life expectancy was more than 28 years. The amount of the verdict may appear liberal, but we are not able to say that it is of such magnitude as to strike the court at first blush as having been rendered as the result of passion or prejudice. Cf. Louisville & N. Railroad Co. v. Mattingly, Ky., 339 S.W.2d 155.

The judgment is affirmed.